IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-30023 |
| **CENTERPOINTE HOTELS** | § | |
| **@ TEXAS II, LP**, *et al*., | § | Chapter 11 |
| | § | |
| Debtors.[1] | § | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION, LIENS AND SUPERPRIORITY CLAIMS TO THE SECURED LENDER FOR THE USE THEREOF; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL; AND (IV) GRANTING RELATED RELIEF**

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE RELIEF REQUESTED OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. RELIEF IS REQUESTED NOT LATER THAN JANUARY 12, 2023.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

CenterPointe Hotels @ Texas II, LP, *et al*., the above-captioned debtors and debtors in possession (the "Debtors"), hereby file this *Emergency Motion for Entry of an Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II)*

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: CenterPointe Hotels @ Texas II, LP (5812); and CenterPointe Partners @ Texas, LLC *d/b/a* Hampton Inn I-10 East (4943). The Debtors' service address is: 3906 Brookston St., Houston, Texas 77045.

*Granting Adequate Protection, Liens and Superpriority Claims to the Secured Lender for the Use Thereof; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral; and (IV) Granting Related Relief* (the "Motion"), and in support hereof, respectfully state as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this Motion are sections 105, 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## II. BACKGROUND

**A.    In General**

3. On January 2, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

4. Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession. No official committee has been appointed in the Chapter 11 Cases, and no request has been made for the appointment of a trustee or examiner.

5. The Debtors were formed in 2013 in connection with a planned two-phase hotel development project, referred to as the "City East Development," for the construction of four

hotel properties in total (two hotels per phase). Debtor CenterPointe Partners @ Texas, LLC ("CP Partners") was established as Texas limited liability company, with its initial members being, Lou Ann Guillory ("L. Guillory") and DCG Hotel Partners, LLC ("DCG Partners"), an affiliated entity owned by L. Guillory, James Guillory, Sr. ("Guillory, Sr."), and James Guillory, Jr. ("Guillory, Jr.," and, collectively with L. Guillory and Guillory, Sr., the "Guillorys"), to act as general partner and manager of certain subsidiary investment vehicle entities, including Debtor CenterPointe Hotels @ Texas II, L.P. ("CP Hotels").[2]

6. CP Hotels was established as Texas limited partnership, with CP Partners being its General Partner, acquire and real property located east of downtown Houston at 10505 East Freeway, Houston, Texas 77029, and to construct and lease the initial hotel built in phase one of the City East Development – the Hampton Inn Houston I-10 East (the "Hotel").

7. The real property and improvements (the "Hotel Property") upon and in which the Hotel operates is leased to CP Partners. CP Partners owns the license/franchise authorizing the operation of the Hotel as a Hampton branded hotel pursuant to a Franchise License Agreement (the "Hampton License") by and between Hampton Inns Franchise LLC and CP Partners. Hotel operations are managed by HarDam Hospitality, LLC ("HarDam"), a non-debtor affiliate of the Debtors, and Gibson Hotel Management, Inc. ("Gibson").

**A.     Debtors' Capital Structure and Secured Debt**

   *i.     The Limited Partners*

8. Shortly after the formation of CP Hotels, the Debtors with DCG Partners acting as sponsor and organizer, raised approximately $1,800,000.00 through a private offering (the "Offering") of Class A Special Limited Partner Units ("Class A Interests"). The Class A

---

[2] On December 16, 2015, DCG Partners merged into CP Partners (the "DCG Merger") resulting in all membership interests in CP Partners being held directly by the Guillorys.

Interests are held by CP Partners[3] and Jack Lee ("J. Lee"), Paul Lee ("P. Lee"), George Lee ("G. Lee"), and Agama Properties, LLC ("Agama" and, collectively with J. Lee, P. Lee, and G. Lee, the "Outside Limited Partners"). Collectively, the Class A Interests constitute 60% of the aggregate Partnership Interests in the Partnership. Subject to certain defined "Major Decisions" set forth in the Limited Partnership Agreement (the "Partnership Agreement"), Class A Interest holders are not entitled to participate in or have control over the management of the Partnership. Nor do Class A Interest holders have the right to remove the General Manager under the Partnership Agreement.

9. In exchange for its various roles in sponsoring, organizing and managing the Offering, DCG Partners received all issued and outstanding units of Class B limited partnership interests in CP Hotels (the "Class B Interests"). The Class B Interests constitute 39% of the aggregate Partnership Interests in the Partnership.

    ii.    *CP Partners' Secured SBA 504 Financing*

10. To finance the acquisition and construction of the Hotel, CP Partners obtained a SBA guaranteed 504 loan in the aggregate amount of $8,001,400.00 (the "SBA 504 Financing"). Pursuant to the terms of the SBA Authorization for Debenture Guarantee, the SBA 504 Financing consisted of two separate loans: (i) a senior secured loan in the amount of $4,657,400.00 (the "First Lien Debt") from ZB, N.A. dba Amegy Bank f/k/a Amegy Bank National Association ("Amegy"); and (ii) a $3,344,000.00 subordinated loan (the "504 Loan") funded by a debenture issued by Greater Texas Capital Corporation ("CDC") and guaranteed by the U.S. Small Business Administration ("SBA").

---

[3] The Class A Interests held by CP Partners were initially issued to DCG and were acquired by CP Partners through the DCG Merger.

11. The First Lien Debt is evidenced by that October 11, 2013, Promissory Note (the "First Lien Note") in the original principal amount of $4,500,000.00 and increased and modified to $4,657,400.00 pursuant to a series of written Note and Lien Modification, Renewal and Extension Agreements, with the fifth and last such written modification recorded in Harris County at RP-2020-635702. The First Lien Debt is secured by a senior mortgage against the Hotel Property evidenced by the Deed of Trust and Assignment of Rents originally recorded in Harris County Texas at 20130531187, and senior liens against certain of CP Hotel's personal property, including the furniture, fixtures and equipment of the Hotel purchased with proceeds of the SBA 504 Financing (the "FFE Collateral"), and Rental Income (defined below and, collectively, with the Hotel Property, the FFE Collateral, and as more fully set forth in that Security Agreement by and between CP Hotel and Amegy, the "504 Collateral").

12. The 504 Loan is evidenced by that October 11, 2013, Promissory Note in the original principal sum of $3,344,000.00, which is secured by a second lien Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents which was recorded in Harris County on January 20, 2016, under RP-2016-23188.

13. While CP Partners is a guarantor of the SBA 504 Financing, CP Partners is not a borrow and its guaranty is unsecured, except to the extent that CP Partners owns any of the FFE Collateral.

14. Upon information and belief, the SBA 504 Financing is currently owned and held by ZSBNP, LLC.

    iii.    *CP Partners' Secured EIDL Loan*

15. In 2020, SBA established its COVID-19 Economic Injury Disaster Loan (EIDL) program to help small business stay in operations and recover from the economic impact of the

5

COVID-19 pandemic.  Pursuant to the EIDL program, CP Partners received loan from the SBA in the amount of $500,000 (the "EIDL Loan").  The EIDL Loan is evidenced by May 19, 2020, Note, as modified by that 1st Modification Note dated March 10, 2022 (the "EIDL Note") and is secured by liens in and to property then owned or thereafter acquired by CP Partners, including all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code (the "EIDL Collateral").

16. CP Hotels is neither a borrower nor a guarantor under the EIDL Loan.

### iv. *Cash Collateral*

17. As noted above, CP Partners leases the Hotel Property from CP Hotels pursuant to a Lease Agreement dated August 1, 2013 (the "Lease").  Pursuant to the Lease, the rent charged to CP Partners is to be "in an amount that does not exceed debt service and verifiable expenses paid [CP Hotels] that are directly related to the property" ("Rental Income").

18. Hotel revenue ("Hotel Revenue") is generated from operations as a Hampton branded hotel pursuant to the Hampton License held by CP Partners.  Significantly, other than the right to receive Rental Income pursuant to the Lease, CP Hotels has no interest in or rights under the Hampton Licenses.

19. Accordingly, while Hotel Revenue is purportedly included as EIDL Collateral, Hotel Revenue is not 504 Collateral and is not Cash Collateral of the holder of the SBA

Financing Loan debt. The Cash Collateral of the holder of the SBA Financing Loan debt is limited to the Rental Income received by CP Hotels.

### III.  RELIEF REQUESTED

20. By this Motion, the Debtors seek entry of an order (the "Interim Order"), substantially in the form submitted herewith: (i) approving the Debtors' use of Cash Collateral as working capital in the operation of the business for the purposes specified in, and, at least, for the period defined in the budget (the "Budget") which is attached hereto as **Exhibit A** and incorporated by herein by reference; (ii) providing adequate protection for, and to the extent of, any diminution in the value of the Cash Collateral; and (iii) scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

### IV.  STATEMENT REGARDING SIGNIFICANT PROVISIONS

21. Pursuant to Bankruptcy Rule 4001(b), the Debtors respectfully state that as adequate protection for the diminution in value of Cash Collateral, the Debtors will: (i) maintain the value of their business as a going-concern; (ii) comply at all times with the Budget, subject to reasonable variances; (iii) make monthly payments to the SBA at the contract rate on the EIDL Note; and (iv) make interest only payments to the holder of the SBA 504 Financing debt in the amount of $18,100.00 per month.

### V.  BASIS FOR RELIEF REQUESTED

22. Under section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral if each entity that has an interest in such cash collateral consents or of the Court, after notice and a hearing, authorizes the use of the cash collateral. 11 U.S.C. § 363(c)(2). Pursuant to Bankruptcy Code section 363(c)(3), the Court must condition a debtor's use of cash collateral as

is necessary to provide adequate protection of the interest in the cash collateral claimed by a party.  11 U.S.C. § 363(c)(3).

23. Bankruptcy Rule 4001(b) and (d) governs the procedure for consideration of motions to use cash collateral, and both subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization.  *See* FED. R. BANKR. P. 4001(b) and (d).  At a hearing on a debtor's motion for the use of cash collateral, the debtor bears the burden of proof on the issue of adequate protection, and the party claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien.  11 U.S.C. § 363(p)(2) ("In a hearing under [section 363], the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest").

### A. Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm

24. While the Debtors' business has made significant recoveries from the COVID-19 related economic downturn, that recovery is not complete.  The use of Cash Collateral is therefore necessary to ensure that there are no lapses in operation, no matter how transitory, that could have a devastating impact on the value of the Debtors' business and efforts to effectuate a reorganization.  Further, the Debtors have incurred payroll obligations and operating expenses and believe that the failure to pay these obligations and expenses would result in a material loss of the Debtors' workforce, complications with vendors and customers, and have a detrimental impact on restructuring efforts.  Unless the Debtors are permitted to use Cash Collateral to conduct operations, pay employees, and maintain the value of their assets, the Debtors' operational capacity will be significantly reduced, and the Debtors will face the loss of the workforce and customer relationships.

25. The use of Cash Collateral is necessary and appropriate to stabilize the Debtors' operations and revenue by paying ordinary, post-petition operating expenses, and any Court-approved prepetition expenses that may be at issue. Without authority to use Cash Collateral, the Debtors will not be able to function as a going concern for the interim period while the Debtors negotiate, finalizes, and seek Court approval of a Final Order. In turn, the Debtors will not be able to proceed to an efficient conclusion of the Chapter 11 Cases through an orderly restructuring of their financial affairs. Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtors' business and will be in the best interests of the Debtors, their estates, creditors and other parties in interest.

B. **The Proposed Adequate Protection is Sufficient**

26. Through this Motion, the Debtors intend to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date, to the secured lenders, for the use of the Cash Collateral by:

   a. maintaining the going concern value of the collateral by using the Cash Collateral to continue to operate the business and administer the Chapter 11 Cases;

   b. servicing the EIDL Loan by making monthly payments to the SBA at the contract rate on the EIDL Note; and

   c. servicing the SBA 504 Financing Debt by making interest only payments to the holder in the amount of $18,100.00 per month.

27. The continuation of the Debtors' operations presents the best opportunity for the secured lenders to receive the greatest recovery on account of their respective claims against the estates. Accordingly, the Debtors submit that use of the Cash Collateral will allow the Debtors to continue operations, preserve the lenders' collateral and thereby protect the interests of all parties. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the

9

collateral. *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably post-petition, then the secured creditor is adequately protected); *see also In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

## VI.   REQUEST FOR INTERIM RELIEF

28.     An immediate need exists for the Debtors to obtain approval of the use of Cash Collateral. Without immediate use for an interim period as set forth in the Budget, the Debtors will be unable to continue operations and risk the loss of significant value. The Debtors' business, as a going concern, has a value far in excess of any value that might be obtained in a chapter 7 liquidation. Accordingly, it is imperative that a preliminary hearing be set immediately, but that relief be granted no later than January 12, 2022, in order for the Debtors to timely make their currently scheduled payroll.

29.     Pursuant to Bankruptcy Rule 4001, the Debtors request that the Court set a preliminary hearing on the use of Cash Collateral, and that at such preliminary hearing, the Court authorize the temporary use of Cash Collateral, consistent with the Budget, in order to avoid immediate and irreparable harm to the Debtors' estates pending a Final Hearing.

## VII. REQUEST FOR FINAL HEARING

30. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors also request that the Court set a date for a Final Hearing as soon as practicable to consider entry of a Final Order, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## VIII. EMERGENCY CONSIDERATION

31. Pursuant to Bankruptcy Rule 9013-1, the Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." *See* FED. R. BANKR. P. 6003. Here, the Debtors believe an immediate and orderly transition into chapter 11, including authorization to use Cash Collateral, is critical to the viability of their operations and ability to meet payroll obligations, and that any delay in granting the relief requested could cause irreparable harm. Furthermore, the failure to receive the requested relief would severely disrupt the Debtors' operations at this critical juncture and imperil the Chapter 11 Cases. Accordingly, the Debtors respectfully request that the Court approve the relief requested in this Motion on an emergency basis and that relief be granted no later than January 12, 2022, in order for the Debtors to timely make their currently scheduled payroll.

## IX. REQUEST FOR WAIVER OF STAY

32. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h). Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied. As explained herein, the relief

requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their business and preserve the value of the estates.

## X. RESERVATION OF RIGHTS

33. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of an prepetition claim against the Debtors; (ii) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (iii) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (iv) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (v) a waiver of the Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## XI. NOTICE

34. Notice of this Motion has been provided by telecopy, email, overnight courier and/or hand delivery, to: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the Debtors' Secured Lenders; (iii) the 20 largest unsecured creditors of the Debtors (as found on Official Form 204); (iv) the Internal Revenue Service; and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the hearing and the relief requested in the Motion constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 9014, and the Bankruptcy Local Rules. The Debtors submit that no other or further notice need be provided.

## XII. PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an Interim Order, substantially in form submitted herewith: (i) authorizing use of Cash Collateral pursuant to

section 363(c) of the Bankruptcy Code; (ii) granting adequate protection for the use thereof; (iii) scheduling a Final Hearing pursuant to Bankruptcy Rule 4001 as to use of Cash Collateral; and (iv) granting the Debtors such other and further relief as the Court may deem just and proper.

Respectfully submitted on the 9th day of January, 2023.

**OKIN ADAMS BARTLETT CURRY LLP**

By: ⎯⎯⎯/s/ *David L. Curry, Jr.*⎯⎯⎯
Christopher Adams
Texas Bar No. 24009857
Email: cadams@okinadams.com
David L. Curry, Jr.
Texas Bar No. 24065107
Email: dcurry@okinadams.com
Ryan A. O'Connor
Texas Bar No. 24098190
Email: roconnor@okinadams.com
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158

**PROPOSED ATTORNEYS FOR THE DEBTORS**

### CERTIFICATE OF ACCURACY PURSUANT TO B.L.R. 9013-1(i)

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify the accuracy of the matters set forth in the foregoing Motion.

By: ⎯⎯⎯/s/ *David L. Curry, Jr.*⎯⎯⎯
David L. Curry, Jr.