**Exhibit A**

**Mediated Settlement Agreement**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO: 23-30023 |
| CENTERPOINTE HOTELS @ TEXAS II, § | |
| LP, *et al.*, § | |
| Debtors. § | Jointly Administered |
| § | CHAPTER 11 |

## MEDIATED SETTLEMENT AGREEMENT

This is a Mediated Settlement Agreement between Centerpointe Hotels @ Texas II, LP, CenterPointe Partners@ Texas, LLC (the "Debtors"), James Guillory and his parents (the "Guillorys") and related entities (together with the Guillorys, the "Guillory Parties", as listed on Exhibit "A"), George Lee and his related parties (the "Lee Parties", as listed on Exhibit "B") and ZSBNP and its related parties (the "Lender", as listed on Exhibit "C").

The provisions of the first two paragraphs are binding on execution. The provisions of the balance of this Agreement are binding only upon approval of the United States Bankruptcy Court for the Southern District of Texas.

1. The Debtors shall promptly file a proposed combined plan and disclosure statement containing the terms of this Agreement. The Debtors will request an expedited hearing on conditional approval of the disclosure statement. The Debtors will request a hearing on approval of the proposed plan by not later than August 7, 2023.

2. The Guillory Parties, the Lee Parties and ZSBNP will not oppose the relief requested by paragraph 1 of this Agreement and will support a proposed plan that incorporates this Agreement, with no additional adverse terms. ZSBNP consents to the use of cash collateral in accordance with the terms of the existing cash collateral order unless there is a breach of this Agreement. ZSBNP consents to the use of cash collateral by the independent manager as set forth in this Agreement, and otherwise as set forth in the existing cash collateral order.

3. Not later than May 19, 2023, the Lee Parties will submit to the Guillory Parties three lists:

    a. The first list will include three independent property managers who are (i) acceptable to the Lee Parties as property managers of the Debtors' hotel; and (ii) have experience operating 5 or more "Hilton" franchised hotels. Independent property managers must have no relationship to the Lee Parties; that is, the Lee Parties may have no present or past contractual, familial or ownership interest with the three proposed property managers.

1 / 8

    b. The second list will include three independent property brokerage companies who are acceptable to the Lee Parties as property brokerage companies for the Debtors' hotel; that is, the Lee parties may have no present or past contractual or ownership interest with the three proposed brokerage companies. Notwithstanding the foregoing sentence, a brokerage will be independent if it is one of the 10 largest hotel brokerage companies in the United States.

    c. The third list will include three Independent Auditors who are acceptable to the Lee Parties as Independent Auditors. Independent auditors must have no relationship to the Lee Parties; that is, the Lee Parties may have no present or past contractual, familial or ownership interest with the three proposed Independent Auditors. One of the Independent Auditors will be retained to conduct an audit to determine the amounts, if any, owed by the Guillory Parties to the LP and the amounts owed by the LP to any Guillory Party. Each Independent Auditor must agree to a fixed price of not greater than $50,000.00 to conduct the audit.

4. Not later than May 25, the Guillory Parties will select one of the three managers, one of the three brokers, and one of the three Independent Auditors. The broker and Independent Auditor will be retained immediately upon selection; the manager will be retained, subject to Hilton's approval rights, if any. If Hilton's approval is required but not obtained, the parties will repeat the selection process until Hilton approves. All submissions and communications with Hilton will be jointly made by the Guillory Parties and the Lee Parties.

5. The independent manager ("Independent Manager"), the Independent Auditor ("Independent Auditor"), and the independent broker ("Independent Broker") will be contractually obligated to accept instructions only if given in writing (i) jointly by the Guillory Parties and the Lee Parties; or (ii) by order of the Bankruptcy Court.

6. Monthly cash flow will be applied as follows:

    a. First, to pay all ongoing property expenses (including such amounts as the manager determines are owed as monthly payments on the EIDL loan) as and when due;

    b. Second, to pay the Independent Auditor;

    c. Third, to establish a cash reserve, which together with all cash reserves on hand, totals $100,000.00;

    d. Fourth, to deposit $12,000.00 per month in a property tax escrow;

    e. Fifth, to pay ZSBNP $37,500.00, which amount will be applied first to interest and then to principal on the ZSBNP loans; all amounts applied to the ZSBNP loans will be applied pro rata between the two loans;

    f. Sixth, to pay preferred returns for the month to the holders of equity in the amounts determined by the pre-petition LP agreement;

    g. Seventh, 40% to the Guillory Parties and 60% to the Lee Parties.

7. The ZSBNP loans will bear interest at their non-default rate. It will not be a default if the ZSBNP debt service is not paid prior to a sale of the property due to a cash flow shortfall in full payment under paragraph 6 of this Agreement; provided, any unpaid interest will accrue at the non-default rate. All property insurance policies must name ZSBNP as an additional loss payee.

8. All of the Limited Partnership's cash, assets and books and records will be turned over to the Independent Manager. The Independent Manager will have sole and exclusive control over all of the assets, and sole signature authority over all accounts. James Guillory, Jr. will manage the Debtors' bankruptcy cases in a manner consistent with this Agreement. The Independent Manager will provide monthly reports to the Lee Parties and the Guillory Parties and will give daily access to all financial and other data to those parties in accordance with its customary practices.

9. The Debtors and the Guillorys must promptly provide the Independent Auditor with all books, records and accounts of any entity under their control if the books, records and accounts are requested by the Independent Auditor. "Promptly" shall mean that the documents are provided in a commercially reasonable manner, but not later than 21 days of receipt of the request.

10. The Independent Auditor will turn over a report to the Guillorys and the Lees upon its completion, and file a notice with the Bankruptcy Court that the report has been served on the parties. The report will not be filed with the Court unless it is challenged. Each of the Guillorys and the Lees will have 14 days after notice of the report is filed to challenge the report by filing a motion to reject the report with the Bankruptcy Court. The Bankruptcy Court may then reject the report or accept it. If no challenge is timely filed, or if the report is not rejected, it will be final for all purposes. The amounts owed, if any, shown in an accepted auditors report, will conclusively be due as reflected in the report.

11. If a sale is not concluded and closed within 12 months of the date on which the Independent Broker is retained, the automatic stay and the discharge injunction will terminate and ZSBNP may foreclose on the hotel under applicable non-bankruptcy law. Notwithstanding paragraph 5, the Guillorys may set the asking price for the property, and any adjustments to the asking price. No asking price and no contract may be for a total price that will produce net proceeds that are less than the outstanding amount due under paragraphs 13(b), 13(c) and 13(d) below.

12. The Lees will promptly advance funds to pay the 2022 property taxes, at an annual interest rate of 15%.

13. The proceeds of any sale will be allocated as follows:

    a. First, to pay the brokerage fees and all usual and customary closing costs;

    b. Second, to repay with accrued interest the advance made pursuant to paragraph 12;

    c. Third, to repay with all accrued and unpaid interest, the ZSBNP loans;

    d. Fourth, to pay all outstanding debts of the LP to any party who is not an insider;

    e. Fifth, to pay to the Guillory Parties any amount owed to them (as determined by the Independent Auditor) that exceeds the amount owed by the Guillory Parties to the LP;

    f. Sixth, if and only if the Independent Auditor has determined that James Guillory, Jr. owes to the LP (net of amounts owed to James Guillory, Jr. by the LP) in excess of $200,000.00, any unpaid preferential returns calculated in accordance with the parties' pre-petition LP agreement;

    g. Seventh, the return of equity (without any accruals) as calculated in accordance with the parties' prepetition LP agreement;

    h. Eighth:

        i. 60% to the Lee Parties;
        ii. 40% to (x) the Lee Parties to the extent that the amount owed by the Guillory Parties (as determined by the Independent Auditor) exceeds the amount owed by the LP to the Guillory Parties); and (y) the balance to the Guillory Parties.

14. If, after the distributions made under paragraph 13, an amount is still owing to the LP by the Guillory Parties, the Lee Parties (acting for the LP) may commence a suit to collect such amounts.

15. Upon the Effective Date of the plan, the parties will exchange mutual releases of all claims and causes of action related to the Debtors or their properties except for:

    a. Amounts or obligations arising under this Agreement;

    b. Amounts or obligations arising under or related to the ZSBNP loans; and/or

    c. Amounts as determined to be due by or to the Guillory Parties by the Independent Auditor's non-rejected report.

16. Upon payment in full of all amounts due under paragraph 13(c) of this Agreement, each party will file a full and unconditional withdrawal of any allegations made in any forum that any other party has engaged in any sort of wrongful conduct.

17. The parties shall not disparage one another, publicly or privately.

May 15, 2023

_____
For the Guillory Parties

_____
For the Lee Parties

_____
For the Debtors

_____
For the Lender

## EXHIBIT "A"
## The Guillory Parties

James O. Guillory, Jr., James O. Guillory, Sr., Lou A. Guillory, DCG Hotel Partners, LLC, DCG Homes, Ltd., DCG Management, LLC, Gibson Hotel Management, LLC, CenterPointe Partners @ Texas, LLC, CenterPointe Hotel Partners, LLC, Creekstone Properties LTD, Creekstone Properties Management LLC, and HarDam Hospitality, LLC as well as all of the foregoing entities' managers.

**Exhibit "B"**
**The Lee Parties**

George Lee, Jack Lee, Paul Lee, Agama Properties, LLC, and Robby Frank

**Exhibit "C"**
**The Lender Parties**

ZSBNP, LLC and its manager (Thomas L. Hunt, in that capacity).