United States Bankruptcy Court
Southern District of Texas
**ENTERED**
September 13, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-30023** |
| **CENTERPOINTE HOTELS** | § | |
| **@ TEXAS II, LP,** *et al.*, | § | **Chapter 11** |
| | § | |
| Debtors.[1] | § | **(Jointly Administered)** |

<u>**ORDER CONFIRMING JOINT CHAPTER 11 PLAN**</u>

On September 13, 2023, the Court conducted a hearing (the "<u>Confirmation Hearing</u>") to consider Confirmation of the *Joint Chapter 11 Plan of Reorganization and Disclosure Statement*, dated August 7, 2023, and final approval of the disclosure statement (the "<u>Disclosure Statement</u>") therein, filed by CenterPointe Hotels @ Texas II, LP, *et al.*, as debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned jointly administered Chapter 11 Cases.  As referred to herein, the "<u>Plan</u>" shall be the Plan attached to this Confirmation Order as **Exhibit 1**, along with all modifications referred to herein.[2]  Having considered the Plan, and based on the evidence presented at the Confirmation Hearing, including the Debtors' Ballot Summary (the "<u>Ballot Summary</u>"), the arguments and representations of counsel, and the entire record in the Chapter 11 Cases, the Court makes the following findings of fact and conclusions of law in support of approval of the Disclosure Statement and Confirmation of the Plan pursuant to Bankruptcy Rule 7052, as made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: CenterPointe Hotels @ Texas II, LP (5812); and CenterPointe Partners @ Texas, LLC *d/b/a* Hampton Inn I-10 East (4943).  The Debtors' service address is: 3906 Brookston Street, Houston, Texas 77045.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan attached hereto as **Exhibit 1**.

## I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.**    **Introduction**

1.    On January 2, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court"). The Chapter 11 Cases have been consolidated for procedural purposes only and are jointly administered under Case No. 23-30023. Since the Petition Date, the Debtors have operated their businesses and managed their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**B.**    **Jurisdiction and Venue**

2.    The Court has jurisdiction over this matter under 28 U.S.C. § 1334. Confirmation of this Plan is a core matter under 28 U.S.C. § 157(b), including those proceedings set forth in subsections (b)(2)(A), (B), (G), (I), (K), (L), (M), and (O), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

**C.**    **Eligibility for Relief**

3.    The Debtors were and continue to be eligible for relief under section 109 of the Bankruptcy Code.

**D.**    **Solicitation Materials and Related Matters**

4.    On August 7, 2023, the Debtors filed their *Joint Chapter 11 Plan of Reorganization and Disclosure Statement* [ECF # 152].

5.     On August 8, 2023, the Court entered an *Order Conditionally Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan* [ECF # 153] (the "Disclosure Statement Approval Order") which, among other things, authorized the Debtors to solicit the Plan and conditionally approved the Disclosure Statement therein.

6.     Pursuant to the Disclosure Statement Approval Order, the Debtors served the combined Plan and Disclosure Statement and the Ballots on August 10, 2023. *See* ECF # 159 (*Notice of Filing Solicitation Materials and Certificate of Service*).  Service of the solicitation materials was good and proper, and the Ballots served by the Debtors conform to Official Form 314 in accordance with the Disclosure Statement Approval Order.

7.     On September 11, 2023, the Debtors filed their Ballot Summary.  The procedures by which Ballots were received and tabulated in the Ballot Summary were fair and properly conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Approval Order.

8.     The Court makes these findings of fact and conclusions of law with respect to final approval of the Disclosure Statement and Confirmation of the Debtors' Plan, which is attached hereto as **Exhibit 1** and incorporated herein by reference.

E.     **Disclosure Statement**

9.     The Disclosure Statement contains: (i) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules, and regulations, including the Securities Act; and (ii) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

3

**F.**     **Objections to Confirmation of the Plan and Disposition Thereof**

10.     To the extent any untimely objections to confirmation of the Plan (each a "Confirmation Objection") were filed, and were not withdrawn or otherwise resolved, the record demonstrates by a clear preponderance of the evidence that the Plan should be confirmed, and the Confirmation Objections should be, and hereby are, overruled.  The Confirmation Objection [ECF # 160] timely filed by Harris County, *et al*. ("Harris County") is resolved as set forth herein.

**G.**     **Confirmation Hearing**

11.     On September 13, 2023, at 11:00 a.m. (prevailing Central Time), the Court held the Confirmation Hearing.  At the Confirmation Hearing, the Debtors established the following record in support of Confirmation of the Plan: (a) all documents identified on the Debtors' Witness and Exhibit List filed in the Chapter 11 Cases in support of Confirmation; (b) the testimony at the Confirmation Hearing; (c) the Ballot Summary; (d) the entire record of the Chapter 11 Cases and the docket maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered by the Court, and evidence and argument made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases, as to all of which the Court takes judicial notice; (e) the statements and argument of counsel on the record at the Confirmation Hearing; and (f) all papers and pleadings filed with the Court in support of, in opposition to, or otherwise in connection with Confirmation of the Plan.

**H.**     **Applicable Confirmation Requirements**

12.     To confirm the Plan, the Debtors are required to demonstrate that the Plan satisfies the provisions of Bankruptcy Code section 1129 by a preponderance of the evidence.

*See Heartland Fed. Sav. & Loan Assoc. v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II),*
994 F.2d 1160, 1163-65 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993) (recognizing that
"preponderance of the evidence is the debtor's appropriate standard of proof both under §
1129(a) and in a cram down").  Here, the Debtors have satisfied their burden of proof with
respect to Confirmation of the Plan.

> i.    *11 U.S.C. § 1129(a)(1) and (a)(2): Compliance with Title 11*

13.    The classification and treatment of Claims and Interests are described in Articles
VI and VII of the Plan, and the Plan implementation procedures are described in Article VIII of
the Plan.  The classification of Claims and Interests described in the Plan satisfies the standards
of section 1122 of the Bankruptcy Code, and the Plan complies with the applicable provisions of
section 1123 of the Bankruptcy Code.  The requirements of section 1129(a)(1) of the Bankruptcy
Code are therefore satisfied.  The Debtors have complied with the terms of the Disclosure
Statement Approval Order, and the applicable provisions of the Bankruptcy Code, Bankruptcy
Rules, and Bankruptcy Local Rules for the Southern District of Texas.  As a result, the
requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

> ii.    *11 U.S.C. § 1129(a)(3): Plan Proposed in Good Faith*

14.    The Debtors have proposed the Plan with the legitimate and honest purpose of
restructuring their financial affairs and making distributions to Holders of Claims and Interests.
The Plan has not been proposed by any means forbidden by law.  The Plan fairly achieves a
result consistent with the objectives and purposes of the Bankruptcy Code.  The Plan is the result
of good faith, arm's-length negotiations among the Debtors, Holders of Claims and Interests, and
other parties in interest.  Accordingly, the Plan has been proposed in good faith and not by any
means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code.

     *iii.*    <u>*11 U.S.C. § 1129(a)(4): Disclosure and Approval of Payments*</u>

15.    Any payment made, or to be made, by the Debtors for services or for costs and expenses during or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of the Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

     *iv.*    <u>*11 U.S.C. § 1129(a)(5): Disclosure of Management and Payments to Insiders*</u>

16.    As required by section 1129(a)(5) of the Bankruptcy Code, the Debtors have disclosed the identity directors and officers proposed to serve as the directors and officers of Reorganized Debtors on and after the Effective Date.  Further, the Debtors have adequately disclosed the identities of the current directors and officers who are Insiders of the Debtors.

     *v.*    <u>*11 U.S.C. § 1129(a)(6): Regulatory Rate Approval*</u>

17.    The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

     *vi.*    <u>*11 U.S.C. § 1129(a)(7): Best Interest of Creditors Test*</u>

18.    The combined Plan and Disclosure Statement adequately provides an analysis with respect to a hypothetical liquidation of the Debtors' assets under chapter 7 of the Bankruptcy Code, and the Court accepts the Debtors' analysis.  The Court concludes that, with respect to each Impaired Class of Claims or Interests, (a) each Holder of a Claim or Interest of such Class has either accepted the Plan, or (b) will receive or retain under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  The requirements of section 1129(a)(7) of the Bankruptcy Code are therefore satisfied.

     *vii.*     <u>*11 U.S.C. § 1129(a)(8): Acceptance of Plan by All Classes*</u>

19.    Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each Class of Claims or Interests, such Class has either accepted the Plan or is not Impaired under the Plan.  As demonstrated in the Ballot Summary, with respect to all Classes of Claims and Interests who were entitled to vote on the Plan, Holders of Claims and Interests either voted to accept the Plan, did not vote, or are deemed to have accepted the Plan, and therefore, the requirements of section 1129(a)(8) are satisfied.

20.    Alternatively, to the extent the requirements of section 1129(a)(8) of the Bankruptcy Code have not been satisfied, the Plan meets the "cramdown" requirements of section 1129(b) of the Bankruptcy Code.  Specifically, the Plan is fair and equitable to the extent that the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property under the Plan on account of such junior Claim or Interest.  Further, the Plan does not unfairly discriminate with respect to any Class of Claims or Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.  Accordingly, and notwithstanding any non-acceptance by Impaired Classes of Claims described in the Ballot Summary, the Debtors' Plan meets the requirements to effect a "cramdown" consistent with the provisions of section 1129 of the Bankruptcy code.

     *viii.*     <u>*11 U.S.C. § 1129(a)(9): Payment of Priority Claims*</u>

21.    Section 1129(a)(9) of the Bankruptcy Code provides for the treatment of claims entitled to priority under sections 507(a)(1)-(8) of the Bankruptcy Code.  Under section 1129(a)(9)(A) of the Bankruptcy Code, holders of section 507(a)(2) and (a)(3) claims must receive cash equal to the allowed amount of such claim.  Section 1129(a)(9)(B) provides that, except to the extent the holder of a claim has otherwise agreed to a different treatment, holders of

7

section 507(a)(1) and (a)(4)-(a)(7) claims must receive deferred cash payments of a value equal to the allowed amount of such claims if the class has accepted the plan or, if not, cash equal to the allowed amount of such claim. The Debtors' Plan satisfies these requirements, and, therefore, complies with sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

22.    Under section 1129(a)(9)(C) of the Bankruptcy Code, holders of claims under section 507(a)(8) or secured tax claims must receive regular installment payments in cash, (a) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (b) over a period ending not later than five (5) years after the date of the order for relief under Bankruptcy Code sections 301, 302 or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan. The Debtors' Plan satisfies such requirements and therefore complies with section 1129(a)(9)(C) of the Bankruptcy Code.

ix.    *11 U.S.C. § 1129(a)(10): At Least One Impaired Class Has Accepted the Plan*

23.    Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under the plan, at least one class must have accepted the plan, without including any votes of insiders. Here, without including acceptance of the Plan by any Insider, Classes 2, 5, 6, and 7 have voted to accept the Plan. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

x.    *11 U.S.C. § 1129(a)(11): Feasibility*

24.    At the Confirmation Hearing, the Debtors offered certain evidence in order to demonstrate the feasibility of the Plan. Based on the testimony and the supporting documentary evidence presented, the Court finds that the Plan adequately implements the restructuring of the Debtors' financial obligations. The evidence and testimony adduced at the Confirmation Hearing is credible, and the Debtors can be expected to achieve operational results sufficient to

satisfy the obligations required under the Plan.  Further, Confirmation of the Plan is not likely to be followed by a chapter 7 liquidation or further need for financial restructuring by the Debtors. Accordingly, the Plan is feasible and complies with section 1129(a)(11) of the Bankruptcy Code.

      *xi.*      *11 U.S.C. § 1129(a)(12): Payment of Fees*

25.     The Plan provides that, until the Chapter 11 Cases are closed, all statutory fees incurred under 28 U.S.C. § 1930(a)(6) will be paid by the Reorganized Debtors.  Thus, the Plan complies with section 1129(a)(12) of the Bankruptcy Code.

      *xii.*     *11 U.S.C. § 1129(a)(13): Retiree Benefits*

26.     The Debtors do not maintain a retirement plan as defined by section 1114 of the Bankruptcy Code, and therefore the Plan does not require the payment of retiree benefits.

      *xiii.*    *11 U.S.C. § 1129(a)(14): Domestic Support Obligations*

27.     The Debtors are not required to pay a domestic support obligations, either under a judicial or administrative order or by statute, and therefore section 1129(a)(14) of the Bankruptcy Code is inapplicable.

      *xiv.*    *11 U.S.C. § 1129(a)(15): Objection to Plan Confirmation by a Holder of an Unsecured Claim*

28.     The Debtors are not individuals, and therefore section 1129(a)(15) of the Bankruptcy Code is inapplicable.

      *xv.*     *11 U.S.C. § 1129(a)(16): Restrictions on Transfers of Property by Nonprofit Entities*

29.     The Debtors are moneyed, commercial companies, and therefore section 1129(a)(16) of the Bankruptcy Code is inapplicable.

9

      *xvi.*    <u>*11 U.S.C. § 1129(b)*</u>

30.    Under section 1129(b) of the Bankruptcy Code, the court "shall confirm the plan … if the plan does not discriminate unfairly, and it is fair and equitable, with respect to each class of claims or interest is impaired under, and has not accepted, the plan." *See* 11 U.S.C. § 1129(b). For purposes of section 1129(b), the Plan is fair and equitable to the extent that the Holder of any Claim or Interest that is junior to the Claims of such Class will not receive or retain any property under the Plan on account of such junior Claim or Interest. The Court finds that the Plan does not discriminate unfairly, is fair and equitable, and otherwise satisfied the elements of 1129(b) of the Bankruptcy Code.

      *xvii.*    <u>*11 U.S.C. § 1129(d)*</u>

31.    The primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act. As a result, the Plan complies with section 1129(d) of the Bankruptcy Code.

## I.    <u>Conclusion</u>

32.    The Debtors have demonstrated that the Plan provisions comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1122, 1123, and 1129 of the Bankruptcy Code, and are reasonable and appropriate.

## II. <u>ORDER</u>

Based on the findings of fact and conclusions of law, the Court has determined that the Disclosure Statement and Plan satisfy the applicable provisions of the Bankruptcy Code and should therefore be approved on a final basis and confirmed. It is therefore hereby **ORDERED** that:

33.     The foregoing findings of fact and the conclusions of law constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to these proceedings by Bankruptcy Rule 9014.  All additional findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to approval of the Disclosure Statement and Confirmation of the Plan, including the Court's rulings with respect to Confirmation, are hereby incorporated into this Confirmation Order.  All findings of fact or conclusions of law constitute rulings of the Court and are part of this Confirmation Order and adopted as such.

A.      **Disclosure Statement**

34.     The Disclosure Statement contained within the Plan is APPROVED on a final basis in all respects.

B.      **Confirmation of the Plan and Approval of Plan Documents**

35.     The Plan is CONFIRMED in its entirety under section 1129 of the Bankruptcy Code, and all of the terms and conditions contained in the Plan are APPROVED.  The Debtors and Reorganized Debtors, as applicable, are authorized to implement the Plan in accordance with the terms and provisions of the Plan, the Mediated Settlement Agreement, and this Confirmation Order.  The Debtors, upon written notice to and in consultation with ZSBNP, the Guillory Parties, and the Lee Parties, are authorized to modify the Plan through and including the Effective Date in accordance with Bankruptcy Code section 1127 without further order of the Court to the extent necessary to make any changes required or appropriate to implement, effectuate, and consummate the Plan, the terms of this Confirmation Order, the Mediated Settlement Agreement, and the transactions respectively contemplated under each of the foregoing.

36.     All Plan Documents attached as **Exhibit 2** in furtherance of consummation of the Plan, or to be executed in order to consummate the transactions contemplated under the Plan, as applicable, are necessary and appropriate to effectuate the transactions contemplated under the Plan and are APPROVED and deemed part of the Plan as if fully set forth therein.  The Debtors, upon written notice to and in consultation with ZSBNP, the Guillory Parties, and the Lee Parties, are authorized to modify the Plan Documents through and including the Effective Date, along with such other certificates, documents, and instruments that may be necessary or appropriate to effectuate the transactions contemplated under the Plan.  All of the Plan Documents comply with the terms of the Plan, and the filing and notice of such Plan Documents was good and proper and in accordance with the Bankruptcy Code and Bankruptcy Rules, and no other or further notice is required.  The Plan and Plan Documents have been negotiated in good faith at arm's length and shall, on and after the Effective Date, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms.  The Plan, including all transactions contemplated by the Plan and Plan Documents, represents the exercise of the sound business judgment of the Debtors, and is in the best interests of the Debtors, Holders of Claims and Interests, and all parties in interest.

C.      **Resolution of Confirmation Objections**

37.     To the extent any untimely Confirmation Objections were filed and were not withdrawn or otherwise resolved at or before the Confirmation Hearing, such Confirmation Objections are expressly overruled, except as set forth in this Confirmation Order.  The Confirmation Objection timely filed by Harris County is resolved as set forth herein.

D.     **Implementation of the Plan**

38.     Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, on the Effective Date, or as soon thereafter as is reasonably practicable, the Debtors and Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to affect any action described in, approved by, contemplated by, or necessary to effectuate the Plan and the Mediated Settlement Agreement.

39.     All such actions taken or caused to be taken consistent with the terms of the Plan, Mediated Settlement Agreement, and Confirmation Order, including any such actions taken prior to the entry of the Confirmation Order, shall be deemed to have been authorized and approved by the Court without further order under any applicable laws or regulations.

E.     **Settlement of Claims and Controversies**

40.     Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies relating to the rights that a Holder of a Claim or Interest may have with respect to such Claim or Interest or any distribution on account thereof.  The entry of this Confirmation Order shall constitute the Court's approval, as of the Effective Date, of each of the compromises and settlements embodied in the Plan, including the Mediated Settlement Agreement set forth in the Plan Documents, and the treatment of Claims and Interests under the Plan, and the Court's finding that all such compromises or settlements are: (i) in the best interest of the Debtors, their estates, the Reorganized Debtors, and their respective creditors and stakeholders; (ii) fair, equitable and within the range of reasonableness; and (iii) satisfy the requirements of Bankruptcy Rule 9019 and Bankruptcy Code section 1123(b)(3)(A).   All provisions of the Mediated

Settlement Agreement and the provisions of the Plan, including, without limitation, the Plan's

release, injunction, exculpation and compromise provisions, are mutually dependent.

**F.**     <u>**Effects of Confirmation of the Plan**</u>

41.     The provisions of the Plan, Plan Documents, Mediated Settlement Agreement, and this Confirmation Order are binding on the Debtors, Reorganized Debtors, ZSBNP, Lee Guillory Parties, Lee Parties, all other Holders of a Claim or Interest, each non-Debtor counterparty to an Executory Contract or Unexpired Lease with any Debtor, any other interested party in the Chapter 11 Cases, and each of the foregoing's respective agents, heirs, successors, and assigns, regardless of whether such Entity filed a Proof of Claim or voted to accept the Plan.

42.     Upon entry of this Confirmation Order, the Debtors, Reorganized Debtors, ZSBNP, Lee Guillory Parties, Lee Parties, and their respective directors and officers, agents, attorneys, and Professionals, as applicable, are authorized and directed to effect any and all actions contemplated or required by the Plan or Plan Documents, including, but not limited to, the Mediated Settlement Agreement. On and after the Effective Date, the Debtors, Reorganized Debtors, ZSBNP, Lee Guillory Parties, Lee Parties, and their respective directors and officers, agents, attorneys, and Professionals are authorized and directed to take all necessary and appropriate steps and corporate action to implement the terms of the Plan, regardless of whether such actions are specifically referred to in the Plan or this Confirmation Order.

43.     Except as otherwise provided by the Plan or this Confirmation Order, the rights afforded under the Plan and the treatment of Claims and Interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims against or Interests in the Debtors and their estates.

44.     Except as otherwise provided in the Plan, this Confirmation Order, or separate Final Order of the Court, all injunctions or automatic stays provided for in the Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date.

45.     Except as otherwise provided in section 1141of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of this Confirmation Order, the provisions of the Plan and Mediated Settlement Agreement shall bind every Holder of a Claim against or Interest in the Debtors and inure to the benefit of and be binding on such Holder's respective successors and assigns, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan and whether such Holder has voted to accept or reject the Plan.

**G.      Vesting of Assets Free and Clear of Liens, Claims and Encumbrances**

46.     Except as otherwise provided in the Plan, Plan Documents, or this Confirmation Order, all Estate Property of either Debtor, and any property acquired by either Debtor under the Plan, will vest in the applicable Reorganized Debtor under the Plan, free and clear of all Claims, Liens, Interests, charges, and other encumbrances.  On and after the Effective Date and, in the case of a Secured Claim, upon satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date pursuant to the terms and conditions of the Plan, except as otherwise provided in the Plan or this Confirmation Order, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Failure to include a Cause of Action on the Schedule of Retained Causes of Action shall not constitute a waiver or release of such Cause of Action.

**H.**     <u>**Release of Liens**</u>

47.     Except as otherwise expressly provided in the Plan, Plan Documents, or Confirmation Order, all assets and property of the Debtors shall be vested in the applicable Reorganized Debtors free and clear of all Liens, Claims and Interests, and all such Liens, Claims and Interests are hereby extinguished.

48.     Except as otherwise provided in the Plan, Plan Documents, or Confirmation Order, or in any contract, instrument or other agreement or document entered into in connection with the Consummation of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security Interests shall revert to the Reorganized Debtors, as applicable, and their respective successors and assigns.

49.     Each Holder of a Secured Claim, or a Claim that is purportedly secured by any security interest or Lien shall, on or before the Effective Date, and concurrently with the applicable distributions made pursuant to the Plan, be authorized and directed to release to the Debtors or Reorganized Debtors, as applicable, any collateral or other assets of a Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably required or requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  To the extent any of the foregoing actions, whether arising prior to the Effective Date or thereafter, require action to be taken by the Holders or applicable agents for such Holders of Secured Claims, the Debtors or Reorganized Debtors, as applicable, shall pay the reasonable and documented fees and expenses of the Holders or

16

applicable agents for such Holder or such Secured Claims, without the need for any further application or notice to or action, order, or approval of the Court.  No distributions under the Plan shall be made to or on behalf of any Holder of a Secured Claim by the Reorganized Debtors unless and until such Holder complies with any outstanding demand that it execute and deliver to the Reorganized Debtors such release of Liens.

## I.    Continued Corporate Existence

50.    The Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are formed or organized and pursuant to their respective bylaws (or other formation documents) in effect prior to their respective Petition Dates, except to the extent such bylaws (or other formation documents) are amended or restated.

51.    The Debtors shall continue to operate their businesses in the ordinary course as Reorganized Debtors in accordance with the Plan and Mediated Settlement Agreement, and shall perform their duties in connection with the Plan and Mediated Settlement Agreement.

## J.    Provisions Related to Executory Contracts and Unexpired Leases

52.    In accordance with Article IX of the Plan, and except as expressly provided herein, all Executory Contracts and Unexpired Leases are deemed assumed pursuant to section 365 of the Bankruptcy Code.  Unless otherwise indicated or provided in a separate order of the Court, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

53.    As of the Effective Date, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are expressly assumed and assigned to the Reorganized Debtors, and such policies shall continue in full force and effect in accordance

17

with their respective terms and applicable non-bankruptcy law, and the Reorganized Debtors shall remain liable for all obligations (including Claims) thereunder regardless of when such obligations (including Claims) arise or become due or liquidated as if the Chapter 11 Cases had not occurred. Consistent with the foregoing, any obligations that come due under the terms of such insurance policies after the effective time of the assumption shall be deemed to arise after the Effective Date, such that the Reorganized Debtors shall not be released from any such obligations.

54. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by order of the Court but not assigned to a third party before the Effective Date shall vest in, and be fully enforceable by, the applicable Reorganized Debtor as of the Effective Date in accordance with its terms, except as may be modified by the provisions of the Plan, any order of the Court authorizing and providing for its assumption, or any applicable law. Each Executory Contract and Unexpired Lease that is assumed by the Debtors shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease.

55. Any term of any policy, contract, or other obligation applicable to any Debtor(s) shall be void and of no further force or effect to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the applicable Debtor(s) as a result of, or gives rise to a right of any Entity based on any of the following: (i) the insolvency or financial condition of a Debtor (prior to the Effective Date); (ii) the commencement of the Chapter 11 Cases; or (iii) the Confirmation or Consummation of the Plan.

56.     Unless otherwise provided by a separate Final Order of the Court, any Claim resulting from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be filed with the Court within thirty (30) days after the later of: (i) the date of an order of the Court (including this Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (iii) the Effective Date of the Plan.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their Estates, the Reorganized Debtors, their property without the need for any objection by the Debtors, further notice to, or action, order or approval of the Court or any other Entity, and any such Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Debtors' Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims under the Plan.

**K.     Release and Exculpation Provisions Approved**

57.     On and after the Effective Date, and except as provided in this Confirmation Order, all injunctions, releases, and exculpation provisions set forth in Article XII of the Plan, are hereby approved, and shall be effective and binding on all Entities, to the fullest extent provided therein.

58.     Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise provided in the Plan or this Confirmation Order, the Mediated Settlement Agreement Parties shall be deemed to have forever waived, released, and discharged each other Mediated Settlement Agreement Party with respect to all claims, causes of

19

action, obligations, suits, and damages related to the Debtors or their properties, except for (a) amounts or obligations arising under the Mediated Settlement Agreement, (b) amounts or obligations arising under the ZSBNP loans, and/or (c) amounts as determined to be due by or to the Guillory Parties by the Independent Auditor's non-rejected report. With respect to the foregoing (a)–(c), each of the Mediated Settlement Agreement Parties' rights are expressly reserved, in accordance with and subject to the Mediated Settlement Agreement. For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall be deemed to alter or modify the terms of the Mediated Settlement Agreement.

59.    Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise provided in the Plan or this Confirmation Order, each Holder of a Claim or Interest and any successor, assign, and affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided in the Plan, all Holders of Claims and Interests and their successors, assigns, and affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor or Reorganized Debtor.

60.    The exculpation provided in Article XII.E of the Plan is approved, provided, however, that such provisions, including the definition of "Exculpated Parties," shall be construed, and only be effective, to the extent that it is consistent with the applicable provisions of the Bankruptcy Code and relevant case law in the Fifth Circuit, including for the avoidance of doubt, that the **only parties entitled to exculpation are the Debtors.**  *In re Highland*

*Cap. Mgmt., L.P.*, 48 F.4th 419, 437.  In addition, the exculpation provided in Article XII.E of the Plan shall be limited to acts which occurred after the Petition Date and prior to the Effective Date.  Any claims against Exculpated Parties for acts described in Article XII.E of the Plan shall be filed in the United States Bankruptcy Court for the Southern District of Texas, Houston Division, and this Court retains exclusive jurisdiction to consider such claims.

61.     Except as otherwise expressly provided in the Plan or this Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities[3] who have held, hold, or may hold Claims or Interests that have been satisfied, released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder

---

[3] Notwithstanding Article XI.F of the Plan, the injunction provided under this paragraph shall be limited in application to those parties set forth in this paragraph.

asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

62.     Upon Confirmation of the Plan, all Holders of Claims and Interests and their respective successors, assigns, and affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of any Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan.

**L.     Professional Compensation**

63.     All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date shall be filed no later than the Professional Compensation Claim Bar Date.   Objections to Professional Compensation Claims must be filed and served on the Reorganized Debtors and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline.  The Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and a hearing in accordance with the procedures established by the Court.  Allowed Professional Compensation Claims shall be paid by the Reorganized Debtors in Cash within ten (10) days of the entry of a Final Order allowing such Claims.

**M.     Post-Confirmation Professional Fees and Expenses**

64.     Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, but effective as of the Effective Date, the Debtors and Reorganized Debtors,

22

as applicable, shall, in the ordinary course of business and without any further notice to or action, order, approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**N.**      **Retention of Causes of Action**

65.      Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Retained Causes of Action set forth in the Plan Documents are not being released, are expressly preserved, and constitute assets that will vest in the Reorganized Debtors.  As relates to such Retained Causes of Action, nothing in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or themselves in accordance with any provision of the Bankruptcy Code or any non-bankruptcy law.  The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Retained Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced.  No Person or Entity may rely on the absence of specific reference to any Retained Cause of Action in the Plan or Plan Documents as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Retained Causes of Action.

O.      **Setoffs and Recoupments**

66.      Except as expressly provided in the Plan or this Confirmation Order, the Reorganized Debtors, may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Reorganized Debtors may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either: (i) agreed in amount by the Reorganized Debtors and Holder of such Allowed Claim; or (ii) otherwise adjudicated by the Court or another court of competent jurisdiction; *provided, however,* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any and all claims, rights, and Causes of Action that such Reorganized Debtor may possess against the applicable Holder.  Except as otherwise authorized in the Plan or this Confirmation Order, in no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or Reorganized Debtors, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article X.I of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

P.      **Non-Material Modifications to the Plan**

67.      Prior to the deadline for filing Confirmation Objections, the Debtors continued to negotiate with parties in interest, received various formal and informal comments to the Plan. The negotiated resolutions and Plan modifications are approved and incorporated in the Plan attached hereto as **Exhibit 1**.  The terms of the negotiated modifications to the Plan: (i) constitute

24

a settlement of the certain informal objections to confirmation (the "Confirmation Disputes"); (ii) are not materially different from what parties in interest could have expected if the Confirmation Disputes were fully litigated; (iii) provide for the same, or more favorable, treatment to Holders of Allowed Claims than would have been received under the Plan as solicited by the Debtors; and (iv) are in the best interest of the Debtors and their Estates.

68.    Pursuant to Bankruptcy Rule 3019, the Plan, as amended, modified, and supplemented, does not: (i) constitute a material modification of the Plan under section 1127 of the Bankruptcy Code; (ii) require additional disclosure under section 1125 of the Bankruptcy Code; (iii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code; (iv) materially and adversely change the treatment of any Claims or Interests; (v) require re-solicitation to any Holders of Claims or Interests; or (vi) require that any such Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Under the circumstances, the form and manner of notice of the Plan and Plan Documents is adequate, and no other or further notice of the Plan or Plan Documents is necessary or required.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed accept, are deemed to have accepted the Plan as amended, modified, and supplemented.

Q.    **Miscellaneous Agreements With Parties In Interest**

69.    *Harris County*.  By agreement of the parties, the Confirmation Objection filed by Harris County is expressly resolved as set forth below:

(i)    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any and all *ad valorem* tax liens securing Harris County's pre- and post-petition taxes shall be retained until all such taxes are paid in full. Harris County's allowed secured tax claim shall accrue interest at the rate of twelve percent (12%) per annum on any taxes delinquent on the Petition Date until such taxes are paid in full. The Debtors or Reorganized Debtors, as

25

applicable, shall pay the taxes for tax year 2023 and all post-petition taxes of Harris County in the ordinary course of business and prior to delinquency under Texas law, otherwise, penalties and interest shall accrue as provided under Texas law until such taxes are paid in full. The failure to pay any post-petition taxes prior to delinquency under Texas law shall be considered a default under this Plan and Harris County is authorized to immediately commence any and all collection actions authorized under Texas law, in state court without further notice of this Court.

(ii)     After the closing of the sale of the Hotel Property, and after all other secured claims against the sold Hotel Property are paid through the 3rd Waterfall of Sale Proceeds, the Reorganized Debtor(s) shall pay any remaining unpaid and outstanding ad valorem taxes still owed by the Debtor(s), prior to disbursing any monies to any other party or entity. Harris County reserves the right to amend its claim to reflect the final 2023 tax amounts and is not capped by the amounts set forth in the Plan.

70.     _Texas Comptroller of Public Accounts_.  By agreement of the parties, any formal

Confirmation Objection or informal Confirmation Disputes asserted by the Texas Comptroller of

Public Accounts, Revenue Accounting Division (the "Comptroller") are expressly resolved as set

forth below:

(i)     Notwithstanding anything in the Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtors or Reorganized Debtors, from any liability owed to the Comptroller for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists.

(ii)     Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that such setoff rights exist.

(iii)     Nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest, including post-Effective Date interest, on the Comptroller's Allowed Claims.

(iv)     The Comptroller shall not be required to file any motion or request for payment in order to be paid any Allowed Administrative Expense Claim for taxes that arise in the ordinary course or non-ordinary course of the Debtors' business, including post-petition taxes incurred by the Debtors after the Petition Date (in accordance with section 503(b)(1)(B)-(D) of the Bankruptcy Code).  Any Allowed Claims of the Texas Taxing Authorities for taxes incurred by the Debtors after their respective Petition Dates (in accordance with section 503(b)(1)(B) – (D) of the Bankruptcy Code) shall be paid as soon as reasonably practicable after the Effective Date in accordance with section 1129(a)(9)(A) of the Bankruptcy Code or in the ordinary course of business when due and payable in accordance with applicable law. For the avoidance of doubt, any Claims of the Comptroller remain subject to the objection process and Disputed Claims

4874-9059-7246, v. 4

procedures set forth in the Plan, and the rights and defenses of the Debtors, Reorganized Debtors, and Comptroller are fully preserved.

(v)     A failure by the Reorganized Debtors to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtors fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this Court.  Notice of the default shall be served via first class mail and electronic mail to: (A) the Debtors, Attn: James O. Guillory, Jr., 3906 Brookston Street, Houston, Texas 77045, Email: james@hardam.biz; and (B) counsel to the Debtors, Okin Adams Bartlett Curry LLP, Attn: David L. Curry, Jr., 1113 Vine Street, Suite 240, Houston, Texas 77002, Email: dcurry@okinadams.com.  The Debtors shall be allowed to cure up to two (2) defaults.  Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

**R.     Miscellaneous Confirmation Provisions**

71.     This Confirmation Order is in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Unit for filing and recording purposes without further or additional orders, certifications, or other supporting documents. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan, any applicable Plan Documents, and this Confirmation Order.

72.     Under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan or any applicable Plan Documents, shall not be taxed under any law imposing a stamp tax or similar tax.  The appropriate state or local government officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

73.     To the extent that, under applicable non-bankruptcy law, any of the actions contemplated in the Plan would otherwise require the consent or approval of the Holders of Interests in the Debtors, this Confirmation Order shall constitute such consent or approval, and such actions shall be, and are deemed to have been, taken by unanimous action of the Holders of Interests in the Debtors.

74.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Plan and this Confirmation Order, and all other agreements and documents executed and delivered pursuant to the Plan, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

75.     The Debtors and Reorganized Debtors, as applicable, shall have the right, to the fullest extent permitted by section 1142 of the Bankruptcy Code, to apply to the Court for an order, notwithstanding any otherwise applicable non-bankruptcy law, directing any appropriate Entity to execute and deliver an instrument or perform any other act necessary to implement the Plan, the Plan Documents, or the provisions of this Confirmation Order.

76.     On and after the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Court, except as otherwise provided in the Plan or in this Confirmation Order, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including, but not limited to, jurisdiction over the matters set forth in Article XV of the Plan.

77.     If any or all of this Confirmation Order is hereafter reversed, modified, or vacated by subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan before the Debtors or Reorganized Debtors receive written notice of any such

28

order, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such act or obligation.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order before the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, and all documents, instruments, and agreements related thereto or any amendments or modifications thereto.

78.    The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision, nor constitute a waiver thereof, it being the intent of the Court that the Plan is confirmed in its entirety.

79.    The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law entered contemporaneously with this Confirmation Order, are nonseverable and mutually dependent.

80.    After the Effective Date, the Reorganized Debtors shall file all quarterly reports and pay all statutory fees due and payable for each quarter (including any fraction thereof).All statutory fees charged pursuant to 28 U.S.C. § 1930 shall be timely paid by the Reorganized Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

81.    On the Effective Date, and following the payment of all amounts under the Plan required to be paid on the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

82.    This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.  The requirements under Bankruptcy Rule

3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rule 3020(e), 6004(h), 6006(d), or 7062.

83. In the event of any direct conflict or inconsistency between any provision of this Confirmation Order, on the one hand, and the provisions of the Plan, on the other hand, the provisions of this Confirmation Order shall govern and control. Notwithstanding the foregoing, the Reorganized Debtors may apply or move the Court for resolution of any dispute concerning the foregoing.

84. Prior to the Effective Date, the Debtors shall timely file operating reports, in a form reasonably acceptable to the U.S. Trustee, on a nonconsolidated basis for each month, and shall timely pay all statutory fees due and payable pursuant to section 1930 of Title 28 of the United States Code for each quarter (including any fraction thereof). On and after the Effective Date, the Reorganized Debtors shall timely file post-confirmation reports, in a form reasonably acceptable to the U.S. Trustee, on a nonconsolidated basis for each quarter, and shall timely pay all statutory fees due and payable for each quarter (including any fraction thereof). Each Debtor shall remain obligated to pay statutory fees to the U.S. Trustee and to file reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

85. On the Effective Date, the Debtors shall file a notice of the occurrence of the Effective Date with the Court.

Signed: September 13, 2023

_Jeffrey P. Norman_
Jeffrey P. Norman
United States Bankruptcy Judge

30

**EXHIBIT 1**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 23-30023** |
| **CENTERPOINTE HOTELS** | § | |
| **@ TEXAS II, LP,** *et al.,* | § | **Chapter 11** |
| | § | |
| **Debtors.**[1] | § | **(Jointly Administered)** |

**DEBTORS' JOINT CHAPTER 11 PLAN**
**OF REORGANIZATION AND DISCLOSURE STATEMENT**

**OKIN ADAMS BARTLETT CURRY LLP**

Christopher Adams
Texas Bar No. 24009857
David L. Curry, Jr.
Texas Bar No. 24065107
Ryan A. O'Connor
Texas Bar No. 24098190
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158
Email: cadams@okinadams.com
Email: dcurry@okinadams.com
Email: roconnor@okinadams.com

**ATTORNEYS FOR THE DEBTORS**

Dated:  August 7, 2023

---

[1] The debtors and debtors in possession in these chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: CenterPointe Hotels @ Texas II, LP (5812); and CenterPointe Partners @ Texas, LLC *d/b/a* Hampton Inn I-10 East (4943).  The Debtors' service address is: 3906 Brookston Street, Houston, Texas 77045.

Page

ARTICLE I. INTRODUCTION ............................................................................................. 1

ARTICLE II.  DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF
TERMS, COMPUTATION OF TIME, AND GOVERNING LAW
      A. Defined Terms ........................................................................................... 2
      B. Rules of Interpretation and Construction of Terms .................................... 10
      C. Computation of Time ................................................................................. 10
      D. Governing Law ......................................................................................... 11
      E. Reference to Monetary Figures ................................................................. 11
      F. Incorporation of Documents by Reference ................................................ 11

ARTICLE III.  DEBTORS' HISTORY, ASSETS AND LIABILITIES, AND MAJOR EVENTS
      A. Incorporation and Ownership ................................................................... 11
      B. Management ............................................................................................. 12
      C. Hotel Services .......................................................................................... 12
      D. Summary of Creditors and Debt as of the Petition Date ............................ 12
      E. Events Leading to Bankruptcy .................................................................. 13

ARTICLE IV.  MAIN EVENTS IN THE CHAPTER 11 CASES
      A. General Overview ..................................................................................... 15
      B. Cash Collateral ......................................................................................... 15
      C. Schedules and Statements of Financial Affairs .......................................... 16
      D. Meeting of Creditors ................................................................................ 16
      E. Bar Dates ................................................................................................. 16
      F. Retention of Professionals ........................................................................ 16
      G. Examiner and Mediation .......................................................................... 16

ARTICLE V. SOLICITATION AND CONFIRMATION
      A. Who May Vote ......................................................................................... 17
      B. How to Vote ............................................................................................. 17
      C. Acceptance of Plan and Votes Required for Class Acceptance ................... 18
      D. Confirmation Hearing; Confirmation of the Plan ...................................... 19
      E. Non-Confirmation of the Plan ................................................................... 20
      F. Conclusion and Recommendation ............................................................. 20

ARTICLE VI.  ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS
      A. Administrative Claims .............................................................................. 21
      C. Professional Compensation Claims ........................................................... 21
      D. Priority Tax Claims .................................................................................. 22

ARTICLE VII.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS
      A. Classification in General ........................................................................... 22
      B. Summary of Classification of Claims and Interests .................................... 22
      C. Treatment of Claims and Interests ............................................................ 23
      D. Special Provision Governing Unimpaired Claims ...................................... 25
      E. Elimination of Vacant Classes .................................................................. 25
      F. Controversy Concerning Impairment ........................................................ 25
      G. Subordinated Claims ................................................................................ 25

H. No Waiver ...............................................................................................................26

ARTICLE VIII.  MEANS FOR IMPLEMENTATION OF THE PLAN
A. Corporate Existence  .............................................................................................26
B. Reorganized Debtors ..............................................................................................26
C. Directors and Officers of the Reorganized Debtors.................................................26
D. Vesting of Assets in the Reorganized Debtors........................................................26
E. Preservation of Claims and Causes of Action  .......................................................27
F. Corporate Action of the Debtors .............................................................................27
G. Effectuating Documents; Further Transactions.......................................................27
H. Post-Confirmation Operations and Marketing of Hotel Property ..............................28

ARTICLE IX.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
A. Assumption and Rejection of Executory Contracts and Unexpired Leases  ..............28
B. Indemnification Obligations ....................................................................................29
C. Claims Based on Rejection of Executory Contracts or Unexpired Leases..................29
D. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed................29
E. Preexisting Obligations to Debtors..........................................................................30
F. Modifications, Amendments, Supplements, Restatements, or Other Agreements.........31
G. Reservation of Rights...............................................................................................31
H. Nonoccurrence of Effective Date ............................................................................31
I. Contracts and Leases Entered Into After the Petition Date..........................................31

ARTICLE X.  PROVISIONS GOVERNING DISTRIBUTIONS
A. Timing and Calculation of Distributions  .................................................................31
B. Rights and Powers of Reorganized Debtors to Make Distributions ...........................33
C. Delivery of Distributions; Undeliverable or Unclaimed Distributions........................33
D. Manner of Payment.................................................................................................34
E. Distributions to Holders of Disputed Claims ...........................................................34
F. Compliance with Tax Requirements ........................................................................34
G. Allocations .............................................................................................................34
H. No Post-Petition Interest on Claims.........................................................................34
I. Setoffs and Recoupment .........................................................................................35
J. Claims Paid or Payable by Third Parties ..................................................................35

ARTICLE XI. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
DISPUTED CLAIMS
A. Claims Administration Responsibilities  ..................................................................36
B. Estimation of Claims and Interests ..........................................................................36
C. Adjustment to Claims or Interests Without Objection ...............................................37
D. Time to File Objections to Claims.............................................................................37
E. Disallowance of Claims or Interests.........................................................................37
F. Amendments to Claims or Interests .........................................................................38
G. No Distributions Pending Allowance .......................................................................38
H. Distributions After Allowance  .................................................................................38

ARTICLE XII.  SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS
A. Mediated Settlement Agreement .............................................................................38
B. Release and Discharge of Debtors  ..........................................................................39
C. Release of Liens .....................................................................................................40

D. Releases by the Debtors .................................................................................................40
E. Exculpation .......................................................................................................................40
F. Injunction ..........................................................................................................................41
G. Protections Against Discriminatory Treatment ...........................................................41
H. Recoupment ......................................................................................................................42
I. *Ipso Facto* and Similar Provisions Ineffective ...........................................................42
J. Reimbursement or Contribution ....................................................................................42

ARTICLE XIII.  CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION
A. Conditions Precedent to Confirmation .......................................................................42
B. Conditions Precedent to Effectiveness .........................................................................42
C. Waiver of Conditions .......................................................................................................43
D. Effect of Failure of Conditions .....................................................................................43

ARTICLE XIV.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN
A. Modifications and Amendments ....................................................................................43
B. Effect of Confirmation on Modifications ....................................................................43
C. Revocation or Withdrawal of Plan ...............................................................................43

ARTICLE XV. RETENTION OF JURISDICTION ...................................................................44

ARTICLE XVI.  MISCELLANEOUS PROVISIONS
A. Immediate Binding Effect ..............................................................................................46
B. Additional Documents ....................................................................................................46
C. Payment of Statutory Fees .............................................................................................46
D. Reservation of Rights ......................................................................................................46
E. Successors & Assigns .......................................................................................................47
F. Notices ...............................................................................................................................47
G. Term of Injunctions or Stays .........................................................................................47
H. Entire Agreement ............................................................................................................47
I. Exhibits ..............................................................................................................................48
J. Nonseverability of Plan Provisions ...............................................................................48
K. Plan Proposed in Good Faith .........................................................................................48
L. Closing the Chapter 11 Cases ........................................................................................48
M. Waiver or Estoppel .........................................................................................................48
N. Controlling Document .....................................................................................................49

# ARTICLE I. [2]
# INTRODUCTION

On January 2, 2023, Debtors CenterPointe Hotels @ Texas II, LP and CenterPointe Partners @ Texas, LLC filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

The Debtors propose the following chapter 11 Plan of reorganization for the resolution of outstanding Claims against, Interests in, and expenses incurred by the Debtors. The Debtors are the proponents of this Plan within the meaning of Bankruptcy Code section 1129. This document also encompasses the Disclosure Statement with respect to the Plan. Together, this joint combined Plan and Disclosure Statement, any amendments, supplements, and exhibits thereto, the accompanying Ballot form, if any, and the related materials delivered together herewith are being furnished by the Debtors to Holders of Impaired Claims and Impaired Interests pursuant to Bankruptcy Code section 1125, in connection with the solicitation by the Debtors of votes to accept or reject the Plan and the transactions as described herein.

As discussed in greater detail herein, the Plan constitutes a reorganization plan for the Debtors in accordance with a Mediated Settlement Agreement executed by the Debtors during the Chapter 11 Case. The Plan proposes to distribute available Cash to pay Holders of Allowed Claims and Interests in the order of their priority as set forth in the Bankruptcy Code.

This Plan and Disclosure Statement is designed to provide adequate information to enable Holders of Claims against and Interests in the Debtors to make an informed decision whether to vote in favor of or against the Plan. **All parties are encouraged to read this Plan and Disclosure Statement in its entirety before voting to accept or reject the Plan.** The projected financial information contained herein has not been the subject of an audit, unless otherwise stated.

In making a decision to accept or reject the Plan, Holders of Claims and Interests must rely on their own examination of the Debtors as described herein, including the merits and risks involved. You are encouraged to seek the advice of qualified legal counsel with respect to the legal effect of any aspect of the Disclosure Statement and Plan. In addition, Confirmation and Consummation of the Plan are subject to conditions precedent that could lead to delays in Consummation of the Plan. There can be no assurance that each of these conditions precedent will be satisfied or waived or that the Plan will be consummated. Even after the Effective Date, distributions under the Plan may be subject to delay so that Disputed Claims can be resolved.

With the exception of historical information, future events and matters discussed herein are "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such forward looking statements are subject to risks, uncertainties and other factors which could cause actual results to differ materially.

No party is authorized by the Debtors to give any information or make any representations with respect to the Disclosure Statement and Plan other than that which is contained herein. No representation or information concerning the Debtors, their businesses or the value of their

---

[2] Capitalized terms used but not defined in this Article I shall have the meanings ascribed to them in Article II.A (Defined Terms) or as otherwise defined in this Plan.

property and assets has been authorized by the Debtors, other than as set forth herein. Any information or representation given to obtain your acceptance or rejection of the Plan that is different from or inconsistent with the information or representations contained herein should not be relied upon by any Holders of Claims or Interests in voting on the Plan.

This Disclosure Statement and Plan has been prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities laws or other applicable non-bankruptcy law. Entities holding or trading in or otherwise purchasing, selling or transferring Claims against, Interests in or securities of, the Debtors should evaluate this Disclosure Statement and Plan only in light of the purpose for which it was prepared.

This Disclosure Statement and Plan shall not be construed to be providing any legal, business, financial or tax advice. Each Holder of a Claim or Interest should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

The Disclosure Statement included in this Plan has been conditionally approved by the Bankruptcy Court. Final approval (or disapproval) will occur on the same day as the hearing on the Confirmation of this Plan.

If you are a Holder of a Claim or Interest, you should read this combined Disclosure Statement and Plan carefully. The Debtors, as Plan Proponents, urge all Holders of Claims and Interests in Impaired Classes receiving Ballots to accept the Plan as contained herein**.**

**ARTICLE II.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW**

**A.**     <u>**Defined Terms**</u>

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have meanings ascribed to them in this Article. Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

***Administrative Claim*** or ***Administrative Expense Claims*** means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and/or in connection with operating the Debtors' businesses (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; and (iii) all fees and charges assessed against either Estate under 28 U.S.C. § 1930.

4872-1264-2664, v. 9

***Administrative Claim Bar Date*** means, except as provided in Article III herein, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

***Affiliate*** has the meaning prescribed in Bankruptcy Code section 101(2).

***Allowed*** means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502 that: (i) has been allowed by a Final Order, including but not limited to any Final Order estimating claims for purposes of confirming this Plan; (ii) either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed and liquidated Proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; or (iii) is expressly allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "Allowed" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (a) a timely objection has not been filed, or (b) a timely objection is filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

***Avoidance Actions*** means any and all actual or potential Claims and Causes of Action that have been, or may be, commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by either Debtor pursuant to any applicable section of the Bankruptcy Code, including Bankruptcy Code sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a), or under similar or related state or federal statutes and common law.

***Bankruptcy Code*** means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, and supplemented from time to time).

***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

***Bankruptcy Estate(s)*** or ***Estate(s)*** means the estate of either Debtor created under section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases, and all Estate Property comprising the estates.

***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and made applicable to the Chapter 11 Cases or ancillary proceedings, and the Bankruptcy Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or ancillary proceedings, as the case may be.

***Bar Date*** means May 8, 2023, the date established by the Bankruptcy Court by which Proofs of Claim must be filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an

order excluding Holders of such Claims or Interests from the requirement of filing Proofs of Claim. For the avoidance of doubt, the term "Bar Date" shall also refer to any extended deadline to file Proofs of Claim or Interest agreed to by the Debtors and the applicable party pursuant to a stipulation approved by the Bankruptcy Court.

**Business Day** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**Cash** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

**Causes of Action** means any claims, interests, damages, remedies, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. This term also includes: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**Chapter 11 Case(s)** means the Chapter 11 bankruptcy cases commenced by the Debtors upon the filing of the voluntary petitions on the Petition Date; styled *In re CenterPointe Hotels @ Texas II, LP*, Case No. 23-30023, and *In re CenterPointe Partners @ Texas, LLC*, Case No. 23-30025.  The Chapter 11 Cases are being jointly administered under Case No. 23-30023 and any reference to a document or pleading filed in the Chapter 11 Case shall mean Case No. 23-30023.

**Claim** means a claim against any portion of the Bankruptcy Estate(s) of either Debtor, whether or not asserted, as defined in section 105(5) of the Bankruptcy Code.

**Claims Register** means the official register of Claims.

**Class** means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

**CM/ECF** means the Bankruptcy Court's Case Management and Electronic Case filing system.

**Confirmation** means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

**Confirmation Date** means the date of entry by the Bankruptcy Court of the Confirmation Order.

**Confirmation Hearing** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

**Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**Consummation** means the occurrence of the Effective Date.

**CP Partners** means Debtor CenterPointe Partners @ Texas, LLC.

**CP Hotels** means Debtor CenterPointe Hotels @ Texas II, LP.

**Cure Claim** means a Claim based upon either Debtor's default on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by either Debtor pursuant to Bankruptcy Code section 365.

**Current Directors and Officers** means the directors and officers of the Debtors who were directors and officers of the Debtors as of the Petition Date.

**Debtor** means one of the Debtors, as applicable in the context.

**Debtors** means, collectively, CenterPointe Hotels @ Texas II, LP and CenterPointe Partners @ Texas, LLC.

**Disputed Claim** means a Claim in a particular Class as to which a Proof of Claim has been filed or is deemed to have been filed under applicable law or an Administrative Claim as to which an objection has been filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy Rules, and such objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that: (a) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the applicable Debtor in the Schedules of Assets and Liabilities; (b) any corresponding Claim scheduled by the applicable Debtor in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (c) no corresponding Claim has been scheduled by the applicable Debtor in the Schedules of Assets and Liabilities; or (d) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

**Distribution Record Date** means the Confirmation Date.

**Effective Date** means the date that is the first Business Day after the Confirmation Date, on which: (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

**Entity** means any Person, estate, trust, Governmental Unit, or United States trustee, as set forth in Bankruptcy Code section 101(15).

**Estate Property** means all right, title, and interest in and to any and all property of every kind or nature, owned by either Debtor or their Estates on the Petition Date pursuant to, and as defined by, Bankruptcy Code section 541.

**Exculpated Parties** means, collectively, the Debtors, and with respect to each of the foregoing Entities, any of their respective current officers, directors, Professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents and other representatives (but solely in their capacity as such).

4872-1264-2664, v. 9

**Executory Contract** means an executory contract or unexpired lease as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which either Debtor is a party or beneficiary.

**Exhibit** means an exhibit annexed to the Plan, as may be amended, modified or supplemented.

**Final Order** means an order or judgment of the Bankruptcy Court, or another court of competent jurisdiction, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

**GAAP** means the generally accepted accounting principles as in effect from time to time in the United States.

**General Unsecured Claim** means an Unsecured Claim held by a party other than an Insider that is not: (a) an Administrative Claim; (b) a Professional Compensation Claim; (c) a Priority Tax Claim; or (d) a Priority Non-Tax Claim.

**Governmental Unit** means any governmental unit, as defined in Bankruptcy Code section 101(27).

**Guillory Parties** means, as provided in the Mediated Settlement Agreement, James O. Guillory, Jr., James O. Guillory, Sr., Lou A. Guillory, DCG Hotel Partners, LLC, DCG Homes, Ltd., DCG Management, LLC, Gibson Hotel Management, LLC, CenterPointe Partners @ Texas, LLC, CenterPointe Hotel Partners, LLC, Creekstone Properties LTD., Creekstone Properties Management LLC, HarDam Hospitality, LLC, as well as all of the respective managers of the foregoing entities.

**Holder** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtors or as otherwise determined by order of the Bankruptcy Court.

**Impaired** or **Impairment** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**Insider** has the meaning set forth in Bankruptcy Code section 101(31).

**Interest**, **Equity Interest**, **Membership Interest,** or **Partnership Interest** means any ownership interest in a Debtor, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the

6

Debtor, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

***IRS*** means the Internal Revenue Service.

***Judicial Code*** means title 28 of the United States Code, 28 U.S.C. §§ 1 – 4001.

***Lee Parties*** means, as provided in the Mediated Settlement Agreement, George Lee, Jack Lee, Paul Lee, Agama Properties, LLC, Robby Frank.

***Lee Parties Tax Advance Claim*** means the funds advanced by the Lee Parties in accordance with the Mediated Settlement Agreement for payment of outstanding 2022 property taxes, which advance bears interest at an annual rate of fifteen percent (15%).

***Lender Parties*** means, as provided in the Mediated Settlement Agreement, ZSBNP and its manager (Thomas L. Hunt, in that capacity).

***Lien*** means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

***Mediated Settlement Agreement*** means the settlement reached at the mediation between the Debtors, the Lee Parties, and the Guillory Parties which is memorialized in the Mediated Settlement Agreement attached to this Plan and Disclosure Statement as an Exhibit.

***New Equity Interests*** means the Interests, Equity Interests, Membership Interests, and/or Partnership Interests as reinstated on the Effective Date pursuant to and in accordance with the Plan.

***Other Secured Claim*** means any Secured Claim that is not a Secured Tax Claim, or ZSBNP Secured Claim.  Other Secured Claims shall not include any such claims secured by Liens that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

***Person*** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

***Petition Date*** means January 2, 2023, the date on which the Debtors commenced the Chapter 11 Cases.

***Plan*** means the Debtors' Joint Chapter 11 Plan of Reorganization and Disclosure Statement, as such document may be amended, modified or supplemented from time to time.

***Plan Documents*** means, collectively: (i) those documents, Exhibits, Schedules and forms thereof in furtherance of Confirmation and Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which shall be filed by the Debtors with the Bankruptcy Court as soon as reasonably practicable prior to the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court; and (ii) any additional documents

filed with the Bankruptcy Court prior to the Effective Date as amendments to such previously filed Plan Documents. The Plan Documents include, but are not limited to: (a) the Schedule of Rejected Contracts and Leases; (b) the Schedule of Retained Causes of Action.

***Post-Effective Date Equity Distribution*** means the distribution of the New Equity Interests authorized and issued by the Reorganized Debtors and to be distributed as ordered by the Bankruptcy Court.

***Prepetition Loan Documents*** means those certain notes and instruments executed by the Debtors in favor of Amegy, which were purchased by and transferred to ZSBNP, together with all other documents, instruments, agreements and amendments executed and/or delivered in connection with the foregoing.

***Priority Non-Tax Claim*** means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

***Priority Tax Claim*** means a Claim asserted under Bankruptcy Code section 507(a)(8).

***Pro Rata*** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

***Professional*** means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code. For the avoidance of doubt, this term includes, but is not limited to, Professionals employed by the Debtors and the Committee.

***Professional Compensation Claim*** means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

***Professional Compensation Claim Bar Date*** means, except as provided in Article II herein, forty-five (45) days after the Effective Date.

***Professional Compensation Claim Objection Deadline*** means twenty-one (21) days after the Professional Compensation Claim Bar Date.

***Proponent(s)*** means either or both Debtors, as the context requires.

***Proof of Claim*** means a proof of Claim filed against either Debtor in the Chapter 11 Cases by the applicable Bar Date.

***Reinstate***, ***Reinstated***, or ***Reinstatement*** means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

**Released Party(ies)** means, individually and collectively as the context requires, and solely in their capacities as such, the Debtors, and with respect to the Debtors, their Professionals, successors, assigns, subsidiaries, Affiliates, managed accounts and funds, Current Directors and Officers, principals, shareholders, members, partners, managers, employees, subcontractors, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

**Reorganized Debtors** means, collectively, the Debtors, or any successors or assigns, by merger, consolidation, or otherwise, on and after the Effective Date.

**Retained Causes of Action** means all Causes of Action set forth on the Schedule of Retained Causes of Action, but shall not include any action against a Released Party.

**Sale Proceeds** means Cash proceeds from the sale of the Hotel Property, which shall be marketed and sold in accordance with the Mediated Settlement Agreement.

**Schedules** means, collectively, the Schedule of Assets and Liabilities, Schedule of Equity Security Holders, Schedule of Rejected Contracts and Leases, and Schedule of Retained Causes of Action filed by the Debtors in the Chapter 11 Case.

**Schedule of Assets and Liabilities** means the schedules of assets and liabilities filed by the Debtors in the Chapter 11 Case, as may be amended, modified, or supplemented.

**Schedule of Rejected Contracts and Leases** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors, to be filed as an Exhibit to the Plan.

**Schedule of Retained Causes of Action** means the Retained Causes of Action set forth on the schedule to be filed as an Exhibit to the Plan.

**Secured Claim** means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**Secured Tax Claim** means a Secured Claim for taxes held by a Governmental Unit, including cities, counties, school districts, and hospital districts, (a) entitled by statute to assess taxes based on the value or use of real and personal property and to obtain an encumbrance against such property to secure payment of such taxes or (b) entitled to obtain an encumbrance on property to secure payment of any tax claim specified in Bankruptcy Code section 507(a)(8). Secured Tax Claims shall not include any such Claims secured by liens / security interests that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

**Securities Act** means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local laws or regulations.

**Subordinated Claim** means a Claim that is subordinated to General Unsecured Claims pursuant to (a) a contract or agreement, (b) a Final Order declaring that such Claim is subordinated in right or payment, or (c) any applicable provision of the Bankruptcy Code, including Bankruptcy Code

9

section 510, or other applicable law.  Subordinated Claims specifically include any Claim for punitive damages provided for under applicable law.

***Unexpired Lease*** means a lease to which either Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***Unsecured Claim*** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9).  The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim of a creditor against either Debtor to the extent that such creditor's Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

***Unsecured Insider Claim*** means an Unsecured Claim held by an Insider.

***ZSBNP*** means the Debtors' prepetition secured lender, ZSBNP, LLC.

**B.     Rules of Interpretation and Construction of Terms**

For purposes of this Plan: (1) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (2) any reference in this Plan to an existing document or Exhibit filed or to be filed means that document or Exhibit as it may have been or may be amended, supplemented, or otherwise modified; (3) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of or to this Plan; (4) the words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (5) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (6) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (7) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (8) any reference to docket numbers of documents filed in the Chapter 11 Case are references to docket numbers under the Bankruptcy Court's CM/ECF system; and (9) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

**C.     Computation of Time**

All times referenced in this Plan are prevailing Central Time.  In computing any period of time, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.**     <u>**Governing Law**</u>

Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules.

**E.**     <u>**Reference to Monetary Figures**</u>

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**F.**     <u>**Incorporation of Documents by Reference**</u>

This Plan incorporates by reference certain documents relating to the Debtors that are not presented herein or delivered herewith.  The documents that have been filed in the Chapter 11 Case are incorporated by reference herein in their entirety, including all amendments thereto filed prior to the date set for Confirmation, including: (1) the Debtors' Schedules of Assets and Liabilities and the Debtors' Statements of Financial Affairs [ECF Nos. 50 and 51]; (2) the Examiner's Report [ECF # 118]; and (3) the Mediated Settlement Agreement [ECF # 128-1].

**ARTICLE III.**
**DEBTORS' HISTORY, ASSETS AND LIABILITIES**
**AND EVENTS LEADING TO BANKRUPTCY**

**A.**     <u>**Incorporation and Ownership**</u>

The Debtors were formed in 2013 in connection with a planned two-phase hotel development project, referred to as the "City East Development," for the construction of four hotel properties in total (two hotels per phase).  Debtor CP Partners was established as Texas limited liability company, with its initial members being, Lou Ann Guillory ("<u>L. Guillory</u>") and DCG Hotel Partners, LLC ("<u>DCG Partners</u>"), an affiliated entity owned by L. Guillory, James Guillory, Sr. ("<u>Guillory, Sr.</u>"), and James Guillory, Jr. ("<u>Guillory, Jr.,</u>" and, collectively with L. Guillory and Guillory, Sr., the "<u>Guillorys</u>"), to act as general partner and manager of certain subsidiary investment vehicle entities, including Debtor CP Hotels. On December 16, 2015, DCG Partners merged into CP Partners (the "<u>DCG Merger</u>") resulting in all membership interests in CP Partners being held directly by the Guillorys.

CP Hotels was established as Texas limited partnership, with CP Partners being its General Partner, to acquire real property located east of downtown Houston at 10505 East Freeway, Houston, Texas 77029, and to construct and lease the initial hotel built in phase one of the City East Development – the Hampton Inn Houston I-10 East (the "<u>Hotel</u>").

Shortly after the formation of CP Hotels, the Debtors with DCG Partners acting as sponsor and organizer, raised approximately $1,800,000.00 through a private offering (the "<u>Offering</u>") of Class A Special Limited Partner Units ("<u>Class A Interests</u>").  The Class A Interests are held by CP Partners and Jack Lee, Paul Lee, George Lee, and Agama Properties, LLC (collectively, the "<u>Outside Limited Partners</u>").  The Class A Interests held by CP Partners were initially issued to

DCG and were acquired by CP Partners through the DCG Merger. Collectively, the Class A Interests constitute 60% of the aggregate Partnership Interests in the partnership of CP Hotels. Subject to certain defined "Major Decisions" set forth in the Limited Partnership Agreement (the "Partnership Agreement"), Class A Interest holders are not entitled to participate in or have control over the management of the partnership. Nor do Class A Interest holders have the right to remove the General Manager under the Partnership Agreement.

In exchange for its various roles in sponsoring, organizing and managing the Offering, DCG Partners received all issued and outstanding units of Class B limited partnership interests in CP Hotels (the "Class B Interests"). The Class B Interests constitute 39% of the aggregate Partnership Interests in the partnership.

**B.  Management**

James O. Guillory, Jr. is the President of Debtor CP Hotels and the manager of Debtor CP Partners. The Debtors' day-to-day Hotel operations are managed by HarDam Hospitality, LLC ("HarDam") and Gibson Hotel Management, Inc. ("Gibson").

**C.  Hotel Services**

The real property and improvements (the "Hotel Property") upon and in which the Hotel operates is leased to CP Partners. CP Partners owns the license/franchise authorizing the operation of the Hotel as a Hampton branded hotel pursuant to a Franchise License Agreement (the "Hampton License") by and between Hampton Inns Franchise LLC and CP Partners.

**D.  Summary of Creditors and Debt as of the Petition Date**

To finance the acquisition and construction of the Hotel, CP Partners obtained an SBA guaranteed 504 loan in the aggregate amount of $8,001,400.00 (the "SBA 504 Financing"). Pursuant to the terms of the SBA Authorization for Debenture Guarantee, the SBA 504 Financing consisted of two separate loans: (i) a senior secured loan in the amount of $4,657,400.00 (the "First Lien Debt") from ZB, N.A. *d/b/a* Amegy Bank *f/k/a* Amegy Bank National Association ("Amegy"); and (ii) a $3,344,000.00 subordinated loan (the "504 Loan") funded by a debenture issued by Greater Texas Capital Corporation ("CDC") and guaranteed by the U.S. Small Business Administration ("SBA").

The First Lien Debt is evidenced by that October 11, 2013, Promissory Note (the "First Lien Note") in the original principal amount of $4,500,000.00 and increased and modified to $4,657,400.00 pursuant to a series of written Note and Lien Modification, Renewal and Extension Agreements, with the fifth and last such written modification recorded in Harris County at RP-2020-635702. The First Lien Debt is secured by a senior mortgage against the Hotel Property evidenced by the Deed of Trust and Assignment of Rents originally recorded in Harris County Texas at 20130531187, and senior liens against certain of CP Hotel's personal property, including the furniture, fixtures and equipment of the Hotel purchased with proceeds of the SBA 504 Financing (the "FFE Collateral"), and Rental Income (defined below and, collectively, with the Hotel Property, the FFE Collateral, and as more fully set forth in that Security Agreement by and between CP Hotel and Amegy, the "504 Collateral").

The 504 Loan is evidenced by that October 11, 2013, Promissory Note in the original principal sum of $3,344,000.00, which is secured by a second lien Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents which was recorded in Harris County on January 20, 2016, under RP-2016-23188.

While CP Partners is a guarantor of the SBA 504 Financing, CP Partners is not a borrower and its guaranty is unsecured, except to the extent that CP Partners owns any of the FFE Collateral. The SBA 504 Financing is currently owned and held by ZSBNP, LLC.

In 2020, SBA established its COVID-19 Economic Injury Disaster Loan (EIDL) program to help small business stay in operations and recover from the economic impact of the COVID-19 pandemic. Pursuant to the EIDL program, CP Partners received a loan from the SBA in the amount of $500,000 (the "EIDL Loan"). The EIDL Loan is evidenced by May 19, 2020, Note, as modified by that 1st Modification Note dated March 10, 2022 (the "EIDL Note") and is secured by liens in and to property then owned or thereafter acquired by CP Partners, including all tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code (the "EIDL Collateral"). CP Hotels is neither a borrower nor a guarantor under the EIDL Loan.

As noted above, CP Partners leases the Hotel Property from CP Hotels pursuant to a Lease Agreement dated August 1, 2013 (the "Lease"). Pursuant to the Lease, the rent charged to CP Partners is to be "in an amount that does not exceed debt service and verifiable expenses paid [CP Hotels] that are directly related to the property" ("Rental Income"). Hotel revenue ("Hotel Revenue") is generated from operations as a Hampton branded hotel pursuant to the Hampton License held by CP Partners. Significantly, other than the right to receive Rental Income pursuant to the Lease, CP Hotels has no interest in or rights under the Hampton Licenses. Accordingly, while Hotel Revenue is purportedly included as EIDL Collateral, Hotel Revenue is not 504 Collateral and is not Cash Collateral of the holder of the SBA Financing Loan debt. The Cash Collateral of the holder of the SBA Financing Loan debt is limited to the Rental Income received by CP Hotels.

**E.    Events Leading to Bankruptcy**

The Hotel is not the only business activity/investment in which the Guillorys and the other limited partners are participants. Their business activities and investments are primarily, if not exclusively, related to the development, operation and sale of hotels. The relationships go back at least a decade. For example, the Guillorys and the limited partners participated in an investment in a hotel project in Alabama, where they reached a consensual resolution of the investment, (even though there were losses). Another example is that CP Hotels, itself, is but one facet of a four-part development, with the property in this case representing Phase I. Phase II of the development was constructed and is operating next to the property owned by CP Hotels. In Phase II, there were construction delays and disputes with the contractor and lender. When the partnership for Phase II was faced with cash flow issues, Guillory Jr. agreed that George Lee, one of the limited partners,

13

could, through a separate entity that he controls, take over management of that property in consideration for him addressing the issues. There are still two undeveloped parcels adjacent to the Hotel Property in this Chapter 11 Case, as well as the Phase II property referenced above, that these same parties own through a separate entity. There is no litigation pending with respect to the undeveloped tracts, although because of their proximity to the developed properties, there are expense and maintenance issues that relate to all four parcels.

The genesis of the litigation related to these Chapter 11 Cases is the result of an inability of the Guillorys and the limited partners to agree on to the implementation of certain terms related to the management of the property as set forth in a Partnership Interest Purchase Agreement ("PIP") dated July 26, 2022. The PIP was executed by James O. Guillory, Jr., in his capacity as President and manager of the respective Debtors, and included a provision stating that CP Partners "misused partnership funds for purposes other than the benefit of the Partnership[.]"

Further, the agreement provided Guillory Jr. would step down as President of CP Partners and allow Robby Frank, an employee of an entity related to one or more of the limited partners would assume the role of President of CP Partners. And it is clear after the PIP was closed that Guillory Jr. and the limited partners discussed Guillory Jr. stepping down from his management role and allowing Mr. Frank and a new management company to take control. The PIP states that Guillory will "transfer" the title of President to Mr. Frank without any other guidance as to the mechanics or timing. In exchange, the Debtors received $300,000 when the PIP was closed.

In September 2022, the limited partners filed a lawsuit after Guillory Jr. did not transfer the office of President to Mr. Frank (or otherwise allow for other management to take control). The case was styled *CenterPointe Hotels @ Texas II, LP, et. al v. CenterPointe Partners @ Texas, LLC*; Cause No. 2022-60359 (the "State Court Action") in the 165th Judicial District Court of Harris County, Texas (the "State Court"). The limited partners obtained a temporary restraining order from the State Court in the State Court Action that allowed Mr. Frank to manage and operate the Hotel. As stated above, Mr. Frank is an employee of an entity related to one or more of the limited partners. After two days of hearings on a temporary injunction, the State Court Action was non-suited by the limited partners, and one of the limited partners, with no dispute from the others, told Guillory Jr. in an email to resume management. None of the other limited partners expressed any opposition to this email. Mr. Frank then returned control to Guillory Jr.

The limited partners' position as to why they non-suited the State Court Action was that CP Hotels was paying both sides legal fees and they wanted to stop paying legal fees. The Examiner in the Chapter 11 Case did not find this explanation credible given that the Debtors' efforts to modify the loan were stopped by the State Court Action, but then management was promptly returned to Guillory Jr. only after the Amegy indebtedness was purchased as described below. Specifically, sometime between September and November of 2022, the limited partners loaned money to the secured lender in this Chapter 11 Case, ZSBNP, to purchase Amegy's outstanding secured indebtedness. The Amegy indebtedness was in default, but there had been ongoing negotiations between Amegy and the Debtors about a modification of the loan. It is contested and was not ascertainable by the Examiner in the Chapter 11 Case, as to whether Amegy would have modified the loan and allowed the existing defaults to be cured. It does not appear that Mr. Frank, when he was in control, attempted to cure and/or otherwise modify the Amegy

14

indebtedness. The Guillorys and the Debtors insist that given their past dealings with Amegy and prior modifications, they believe modification would have been approved. Indeed, the loan had been modified five times before and talks for a sixth modification were ongoing at the time the State Court Action was commenced. Moreover, the monetary defaults related to the loan were for partial instead of complete payments, and the non or late payment of taxes. Part of the PIP transaction was to address and did address tax issues.

Once the indebtedness was purchased, ZSBNP did not entertain modification negotiations, despite the fact that ZSBNP clearly has ties to the limited partners. Rather, ZSBNP posted the loan for foreclosure in an effort by the limited partners to seize the valuable Hotel Property. The attempted foreclosure prompted the Debtors to file their Chapter 11 Cases on the Petition Date.

**ARTICLE IV.**
**MAIN EVENTS IN THE CHAPTER 11 CASES**

**A.     General Overview**

On the Petition Date, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. Debtor CP Hotels was assigned case number 23-30023. Debtor CP Partners was assigned case number 23-30025. Pursuant to Bankruptcy Rule 1015(b), the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered under the CP Hotels Chapter 11 Case. The Debtors remain in possession of their property and continue to manage their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. A brief summary of significant matters or events that have occurred to date in the Chapter 11 Case is set forth below. The description of such matters or events is qualified in its entirety by the actual pleadings filed in the Chapter 11 Case and, to the extent of any inconsistencies between the descriptions in this Disclosure Statement and such pleadings, such pleadings shall control. All of such pleadings are on file with, and may be obtained from, the Bankruptcy Court.

**B.     Cash Collateral**

On January 9, 2023, the Debtors filed their *Emergency Motion for Entry of an Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection, Liens and Superpriority Claims to the Secured Lender for the Use Thereof; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral; and (IV) Granting Related Relief* [ECF # 11] (the "Cash Collateral Motion"), which requested approval to continue using ZSBNP's cash collateral during the Chapter 11 Case to maintain the Debtors' operations.

On January 12, 2023, the Bankruptcy Court held an interim hearing on the Cash Collateral Motion and thereafter entered its *Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection, Liens and Superpriority Claims to Secured Lenders for the Use Thereof; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral; and (IV) Granting Related Relief* [ECF # 37].

By agreement of the parties, subsequent interim orders were entered by the Bankruptcy Court which extended and approved the Debtors' continued use of cash collateral during the Chapter 11 Case. *See* ECF Nos. 76 and 112. The Mediated Settlement Agreement described in further detail below also contains ZSBNP's consent to the continued use of cash collateral. However, a Final Order authorizing use of cash collateral has not been entered by the Bankruptcy Court.

## C.      Schedules and Statements of Financial Affairs

The Debtors filed their Schedules and Statements of Financial Affairs [ECF Nos. 50 and 51] in the Chapter 11 Case on January 20, 2023.

## D.      Meeting of Creditors

The meeting of creditors pursuant to section 341 of the Bankruptcy Code occurred on February 7, 2023.

## E.      Bar Dates

On January 12, 2023, the *Notice of Chapter 11 Bankruptcy Case* [ECF # 33] was filed and served on all parties in interest. Among other things, the Notice established May 8, 2023 as the deadline for filing Claims against the Debtors by all creditors (not including Governmental Units), and July 11, 2023 as the deadline for filing Claims against the Debtors by all Governmental Units.

The Bankruptcy Court has not yet established a bar date for filing Administrative Expense Claims in the Chapter 11 Case, but it is expected that such bar date will be set forth in the Confirmation Order.

## F.      Retention of Professionals

Prior to the Petition Date, Okin Adams Bartlett Curry LLP was retained as general bankruptcy counsel to the Debtors. On February 22, 2023, the Court entered its *Order Authorizing the Employment and Retention of Okin Adams Bartlett Curry LLP as Counsel to the Debtors* [ECF # 81].

## G.      Examiner and Mediation

On February 16, 2023, by agreement of the parties, the Court entered its *Order Approving Appointment of Examiner* [ECF # 79] (the "Examiner Order"). Pursuant to the Examiner Order, Randy W. Williams was appointed to serve as the Examiner in the Chapter 11 Case with the duties specified in section 1103(a)(3) and (4) of the Bankruptcy Code. The Examiner filed his *Examiner's Report* [ECF # 118] in the Chapter 11 Case on April 10, 2023.

On March 23, 2023, the Court entered its *Order for Mediation* [ECF # 108] (the "Mediation Order"). In accordance with the Court's Mediation Order, the major parties in interest in this Chapter 11 Case attended mediation before The Honorable Marvin Isgur on May 15, 2023.

Specifically, the Mediation was attended by the Debtors, ZSBNP, the Lee Parties, the Guillorys and certain of the Guillorys' related entities (collectively, with the Guillorys, the "Guillory Parties"). All parties were represented by separate counsel at the Mediation. The Mediation involved numerous disputed issues and allegations of damages between the parties.

The Mediation was successful, and at the conclusion of the of the Mediation, the Debtors, Lender, Lee Parties and Guillory Parties executed that certain *Mediated Settlement Agreement* which, among other things, provides for a settlement of the ongoing disputes between the parties and also provides the path for the Debtors to bring the Chapter 11 Case to an efficient conclusion in accordance with this Plan. In accordance with the Mediated Settlement Agreement, the Hotel will be managed by the Independent Manager while the Independent Broker markets the Hotel for sale and the Independent Auditor prepares a report to determine any amounts that may be owed by the Guillory Parties or the Lee Parties, as applicable.

While the marketing and sale process is conducted, the Debtors' monthly cash flow will be applied in accordance with an agreed waterfall set forth in the Mediated Settlement Agreement. During this period, the ZSBNP Secured Claims will bear interest at their non-default rate, and the Debtors will continue to pay ZSBNP the amount of $37,500.00 per month on account of its Secured Claims. Upon the sale of the Hotel, the Mediated Settlement Agreement also provides for a waterfall for distribution of the sale proceeds. Finally, the Mediated Settlement Agreement provides that the parties will exchange certain mutual releases upon the Effective Date of this Plan.

## ARTICLE V.
## SOLICITATION AND CONFIRMATION

### A.    Who May Vote

Only the Holders of Claims and Equity Interests which are "Impaired" under the terms and provisions of the Plan are permitted to vote to accept or reject the Plan. For purposes of the Plan, only the Holders of Claims and Equity Interests in Classes 2, 3, 4, 5, 6 and 7 (the "Voting Classes") are Impaired under the Plan and thus may vote to accept or reject the Plan. Accordingly, a ballot for acceptance or rejection of the Plan (a "Ballot") is only being provided to members of the Voting Classes.

### B.    How to Vote

Each Holder of a Claim in a Voting Class should read this Plan and Disclosure Statement, together with any Exhibits thereto, in their entirety. After carefully reviewing the Plan and this Disclosure Statement and any Exhibits thereto, please complete the enclosed Ballot, including marking your vote with respect to the Plan, and return it as provided below. If you have an Impaired Claim in more than one Class, you should receive a separate Ballot for each such Claim. If you receive more than one Ballot, you should assume that each Ballot is for a separate Impaired Claim and you should complete and return all of them.

If you are a member of a Voting Class and did not receive a Ballot, if your Ballot is damaged or lost, or if you have any questions concerning voting procedures, please contact David

L. Curry, Jr., counsel to the Debtors, by telephone at (713) 228-4100 or by electronic mail at dcurry@okinadams.com.

Persons or Entities receiving a Ballot should complete and sign each enclosed Ballot and return it to the address provided below. **In order to be counted, Ballots must be duly completed, executed and received no later than September 7, 2023 (the "Voting Deadline").** All Ballots should be returned either by regular mail, hand delivery, overnight delivery, or email to:

**OKIN ADAMS BARTLETT CURRY LLP**
Attn: David L. Curry, Jr.
1113 Vine Street, Suite 240
Houston, Texas  77002
dcurry@okinadams.com

**C.    Acceptance of Plan and Votes Required for Class Acceptance**

As the Holder of a Claim in a Voting Class, your vote on the Plan is extremely important. The Debtors are only soliciting acceptances of the Plan only from Holders of Claims in Voting Classes. You may be contacted by the Debtors or their representatives with regard to your vote on the Plan.

Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if:

(i)    the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan; and

(ii)    the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan.

To meet the requirement for Confirmation of the Plan under the "cram-down" provisions of the Bankruptcy Code with respect to any Impaired Class of Claims which votes to reject, or is deemed to have rejected, the Plan (a "Rejecting Class"), the Debtors would have to show that all Classes junior to the Rejecting Class will not receive or retain any property under the Plan unless all Holders of Claims in the Rejecting Class receive or retain under the Plan property having a value equal to the full amount of their Allowed Claims.

If one or more of the Impaired Classes of Claims or Equity Interests does not accept the Plan, the Plan may nevertheless be confirmed and be binding upon the non-accepting Impaired Class under the "cram down" provisions of the Bankruptcy Code if the Plan does not "discriminate unfairly" and is "fair and equitable" to the non-accepting Impaired Classes under the Plan.

1.      *Discriminate Unfairly*. The Bankruptcy Code requirement that a plan not "discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank.  The Debtors believe that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests because no Class is afforded treatment which is disproportionate to the treatment afforded other Classes of equal rank.

2.      *Fair and Equitable Standard*.  With respect to the Impaired Classes of Unsecured Claims, Bankruptcy Code section 1129(b)(2)(B) provides that a plan is "fair and equitable" if it provides that (i) each holder of a claim of such class receives or retains on account of such claim, property of a value as of the effective date of the plan equal to the allowed amount of such claim; or (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain property under the plan on account of such junior claim or interest.  The Debtors believe that the Plan meets these standards.

The Debtors believe that the requirements of Bankruptcy Code 1129(a) and (b) are met under the Plan.  Accordingly, if necessary, the Debtors will seek Confirmation of the Plan under the "cram down" provisions of the Bankruptcy Code and believe it meets the requirements for Confirmation by the Bankruptcy Court notwithstanding (i) the non-acceptance by an Impaired Class of Claims or (ii) the fact that Holders of Equity Interests in Class 8 are receiving their New Equity Interests in the Reorganized Debtors.

## D.   **Confirmation Hearing; Confirmation of the Plan**

The Bankruptcy Court has scheduled a Confirmation Hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan for **September 13, 2023 at 11:00 a.m. (prevailing Central Time)**, at the courtroom of the Honorable Jeffrey P. Norman, United States Bankruptcy Court, 515 Rusk, Courtroom No. 403, Houston, Texas 77002, which may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any objection to Confirmation of the Plan must be filed and served in accordance with the Bankruptcy Rules and Bankruptcy Local Rules for the Southern District of Texas no later than **September 7, 2023**.

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan if all of the requirements of Bankruptcy Code section 1129 are met.  Among the requirements for confirmation are that the Plan be accepted by all Impaired Classes of Claims and Equity Interests, and satisfaction of the matters described below.

*Feasibility*.  A plan may be confirmed only if it is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor.  The Debtors believe that they will be able to perform their obligations under the Plan without further financial reorganization due to, *inter alia*, the terms of the Mediated Settlement Agreement and the revenue and value generated from the Debtors' Hotel operations.

The Plan provides for payment of Allowed Claims, including contingent, unliquidated and Disputed Claims to the extent they become Allowed Claims, in the order of their priority, provided however, it is unknown what recovery will be available to holders of General Unsecured Claims.  At the present time, the Debtors believe that they will have sufficient funds, as of the Effective

Date, to pay in full the expected payments required under the Plan to the Holders of Allowed Administrative Expense Claims and Allowed Priority Non-Tax Claims in Class 1.

   *Best Interests Standard*.  The Bankruptcy Code requires that the Plan meet the "best interest" test, which requires that members of a Class must receive or retain under the Plan, property having a value not less than the amount which the Class members would have received or retained if the Debtors were liquidated under Chapter 7 on the same date.  The Debtors believe that distributions to all Impaired Classes of Claims in accordance with the terms of the Plan would far exceed the net distribution that would otherwise take place in Chapter 7.  Therefore, the Debtors submit that the interests of creditors are best served by voting to accept the Plan.

**E.      Non-Confirmation of the Plan**

   If the Plan is not confirmed by the Bankruptcy Court, the Bankruptcy Court may permit the filing of an amended plan, dismiss the Chapter 11 Cases, or convert the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code.  In a Chapter 7 case, the Chapter 7 trustee would have to gain an understanding of the nature of the Debtors' businesses, assets, and liabilities, and liquidate the Debtors' assets for the benefit of the Estates.  The Debtors believe that this would result in unnecessary costs and delay, and is not in the best interests of creditors.

   In general, the Debtors believe that liquidation under Chapter 7 of the Bankruptcy Code would result in a substantial diminution of the value of the interests of the creditors because of (i) additional administrative expenses involved in the appointment of a trustee and attorneys, accountants and other professionals to assist such trustee; (ii) additional expenses and claims, some of which might be entitled to priority, which would arise by reason of the liquidation; (iii) failure to realize the full value of the Debtors' assets; (iv) the inability to utilize the work product and knowledge of the Debtors and their Professionals; and (v) the substantial delay which would elapse before creditors would receive any distribution on account of their Claims.  Accordingly, the Debtors believe that the Plan is far superior to liquidation of the Debtors' assets under Chapter 7.

**F.      Conclusion and Recommendation**

   The Plan provides for an orderly and prompt distribution to Holders of Allowed Claims and Allowed Equity Interests against the Debtors.  The Debtors believe that their efforts to maximize the return for Holders of Claims and Equity Interests have been full and complete.  The Debtors further believe that the Plan meets the requirements of the Bankruptcy Code and is in the best interests of all creditors.

**ARTICLE VI.**
**ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS**

   In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims and Priority Tax Claims have not been classified for purposes of voting on, or receiving distributions under, the Plan, and, thus, are excluded from the Classes of Claims and Interests set forth in Article VII hereof.

## A.   Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Reorganized Debtors, each Holder of an Allowed Administrative Claim (other than Holders of Professional Compensation Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; or (ii) if such Administrative claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.  Notwithstanding anything contained in this Article, the Debtors shall continue paying their employees, utilities, insurance finance premiums, and other workforce and insurance obligations in accordance with the Bankruptcy Court's orders and approved practices.  For the avoidance of doubt, to the extent a Holder of an Administrative Claim is not being paid by the Debtors in the ordinary course, such Holder must file a request for payment of such Administrative Claim by the Administrative Claim Bar Date as set forth below.

Except for Professional Compensation Claims, and unless previously filed, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtors no later than the Administrative Claim Bar Date.  Objections to such requests must be filed and served on the Reorganized Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date; or (ii) thirty (30) days after the filing of the applicable request for payment of the Administrative Claims, if applicable.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to file and serve a request for such payment of such Administrative Claims that do not file and serve such request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any action by the Bankruptcy Court.

## B.   Professional Compensation Claims

All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than the Professional Compensation Claim Bar Date.  Objections to Professional Compensation Claims must be filed and served on the Reorganized Debtors and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court.  Allowed Professional Compensation Claims shall be paid by the Reorganized Debtors in Cash within ten (10) days of the entry of a Final Order allowing such Claims.

C.     **Priority Tax Claims**

Except (a) to the extent that the Holders of Allowed Priority Tax Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and (b) to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, then in full and final satisfaction, settlement, release, and discharge of, and in exchange for each Allowed Priority Tax Claim, each Holder of Allowed Priority Tax Claim shall receive from the applicable Reorganized Debtor on the later of (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim; (iii) the date on which such Allowed Priority Tax Claim first becomes due and payable; or (iv) as soon thereafter as is reasonably practicable, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim; provided, however, that the applicable Reorganized Debtor shall have the right to pay any Allowed Priority Tax Claim, or the remaining balance of such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

## ARTICLE VII.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.     **Classification in General**

Except for the Claims addressed in Article VI of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied.

B.     **Summary of Classification of Claims and Interests**

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Allowed Priority Non-Tax | Unimpaired | Not Entitled to Vote |
| Class 2 | Allowed Lee Parties Tax Advance Claim | Impaired | Entitled to Vote |
| Class 3 | Allowed ZSBNP Secured Claims | Impaired | Entitled to Vote |
| Class 4 | Allowed Other Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 6 | Allowed Insider Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Allowed Preferential Returns | Impaired | Entitled to Vote |
| Class 8 | Allowed Equity Interests | Unimpaired | Presumed to Accept |

**C.      Treatment of Claims and Interests**

1.      _Class 1_ – Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, on or after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, (i) payment in full in Cash of its Allowed Class 1 Claim; or (ii) such other treatment as is consistent with the requirements of Bankruptcy Code section 1129(a)(9).

Class 1 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 1 are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to such Class is not required.

2.      _Class 2_ – Class 2 shall consist of the Lee Parties Tax Advance Claim, which claim shall be deemed allowed pursuant to the Plan.  Holders of Allowed Class 2 claims shall be entitled to receive distributions of Sale Proceeds in accordance with the waterfall set forth in the Mediated Settlement Agreement.

Class 2 is Impaired under the Plan. Holders of Allowed Claims in Class 2 are entitled to vote to accept or reject the Plan.

3.      _Class 3_ – On the Effective Date, the principal balance, fees and interest of the ZSBNP Secured Claims shall be reinstated, subject to the terms of the Mediated Settlement Agreement.

Class 3 is Impaired under the Plan. Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.      _Class 4_ – Class 4 shall consist of other Secured Claims that are not ZSBNP Secured Claims or Secured Tax Claims.  On or after the Effective Date, and except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, release, and discharge of and in exchange for each Other Secured Claim, the following:

(i)      As relates to the EIDL Collateral that is subject to the EIDL Loan, the Debtors shall remain bound by and perform in accordance with the EIDL Note, including, but not limited to, making such payments as remain outstanding under the EIDL Loan in

23

accordance with the terms and conditions of the EIDL Note;

(ii)     As relates to any collateral (other than ZSBNP's collateral) that is subject to a prepetition agreement and that has not been sold or surrendered during the Chapter 11 Cases, the Debtors shall, solely as relates to such collateral, remain bound by and perform in accordance with the applicable agreement, including, but not limited to, making such payments as remain outstanding under the respective agreements in accordance with the terms and conditions thereof; *provided*, *however*, that the maturity of such prepetition agreements shall be extended as set forth in the Exhibits to this Plan, which additional payments shall be made as cure for any payments not made by the Debtors.  For the avoidance of doubt, any Lien granted in or to the respective Holder's collateral pursuant to the respective agreement shall be retained by, and for the benefit of, such Holder of an Allowed Other Secured Claim, subject to ZSBNP's Liens arising from the ZSBNP Secured Claim, but solely to the extent and priority existing prior to the Petition Date.

(iii)    For purposes of voting and Confirmation, each Other Secured Claim shall be classified in separate subclasses within Class 4 – *i.e.* 4(a); 4(b); 4(c); etc.

Class 4 is Impaired under the Plan.  Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.      *Class 5* – Class 5 shall consist of the Allowed General Unsecured Claims of all of the Debtors' General Unsecured Creditors.  On the Effective Date, except to the extent that a Holder of an Allowed Class 5 Claim agrees to a less favorable treatment, Holders of Allowed Class 5 Claims shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Class 5 Claim:

(i)      Payment in the ordinary course of the Debtors' business, subject to the sole discretion of the Independent Manager, and, to the extent unpaid at the time of any sale of the Hotel Property;

(ii)     Pro-rata distributions of Sale Proceeds in accordance with the waterfall set forth in the Mediated Settlement Agreement.

Class 5 is Impaired under the Plan.  Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

6.      Class 6 – Class 6 shall consist of Allowed Insider Unsecured Claims of all the Debtors' Insiders.  Except to the extent that a Holder of an Allowed Class 6 Claims agrees to a less favorable treatment, Holders of Allowed Class 6 Claims shall be entitled to receive distributions of Sale Proceeds in accordance with the waterfall set forth in the Mediated Settlement Agreement.

Class 6 is Impaired under the Plan.  Holders of Allowed Claims in Class 6 are entitled to vote to accept or reject the Plan.

7.      Class 7 – Class 7 shall consist of the Allowed Preferential Return Claims to the

extent outstanding and payable by the Debtors pursuant to the applicable limited partnership agreement.   Except to the extent that a Holder of an Allowed Class 7 Claim agrees to a less favorable treatment, Holders of Allowed Class 6 Claims shall be entitled to receive distributions of Sale Proceeds in accordance with the waterfall set forth in the Mediated Settlement Agreement.

Class 7 is Impaired under the Plan.  Holders of Allowed Claims in Class 7 are entitled to vote to accept or reject the Plan.

8.      *Class 8* – Class 8 shall consist of the Allowed Equity Interests in the Debtors. On the Effective Date, the Equity Interests, including the outstanding Partnership Interests in CP Hotels and outstanding Membership Interests in CP Partners, shall be reinstated as New Equity Interests; *provided*, *however*, that such authorized and issued New Equity Interests in the Reorganized Debtors will not be distributed to Allowed Equity Interest Holders until the Allowed Claims in Classes 2, 3, 4, 5, 6, and 7 have been paid in full.

Class 8 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 8 are presumed to accept the Plan and are not entitled to vote to accept or reject the Plan.

**D.      Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**E.      Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interests temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan.

**F.      Controversy Concerning Impairment**

If any controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and hearing, determine such controversy concerning impairment. Failure to timely file an objection in the Chapter 11 Cases shall result in such Person or Entity waiving any objection to the Impairment classifications set forth in the Plan.

**G.      Subordinated Claims**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-

classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### H.     No Waiver

Nothing contained in the Plan shall be construed to waive the Debtors' or other Person's right to object on any basis to any Claim or Interest.

## ARTICLE VIII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.     Corporate Existence

Except as otherwise provided in the Plan, the Debtors shall continue to exist after the Effective Date as a separate limited partnership and limited liability company, respectively, with all the powers of a limited partnership or limited liability company, as the case may be, pursuant to the applicable law in the jurisdiction in which the Debtors are formed and pursuant to their respective by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such by-laws (or other formation documents) are amended or restated. To the extent such documents are amended or restated, they are deemed to be amended and restated pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, or federal law). Neither the preparation nor the filing of the new organizational documents shall be deemed to create a new corporate or other legal entity, and the new organizational documents shall only be deemed amendments to, or amendments and restatements of, applicable organizational documents for purposes of any change of control determination. Each Holder of an Allowed Equity Interest in Class 8 entitled to receive New Equity Interests in the Reorganized Debtors under the Plan shall be required to execute, and agree to be bound by, the new organizational documents.

### B.     Reorganized Debtors

On the Effective Date, the Reorganized Debtors shall have the authority to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

### C.     Directors and Officers of the Reorganized Debtors

On the Effective Date, the current directors and officers of the Debtors shall be established as the directors and officers of the Reorganized Debtors; *provided*, *however*, that the Independent Manager shall have the sole and exclusive control over all of the assets, and sole signature authority over all accounts, as provided in the Mediated Settlement Agreement.

### D.     Vesting of Assets in the Reorganized Debtors

On the Effective Date all property in the Estates, all Retained Causes of Action, and any property acquired by the Debtors pursuant to the Plan shall vest in the respective Reorganized

Debtors, free and clear of all Liens, Claims, charges, or other encumbrances, except those Liens granted under any agreement, instrument, or other document incorporated in the Plan.

On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## E.     Preservation of Claims and Causes of Action

Except as otherwise provided in the Plan, Plan Documents, or in any other contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b)(3), the Reorganized Debtors shall retain and shall have the exclusive right, authority, and discretion to (without further order of the Bankruptcy Court) determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any and all Retained Causes of Action that the Debtors or their Estates may hold against any Entity, whether arising before or after the Petition Date and unless released herein. The Debtors reserve and shall retain the foregoing Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases.

## F.     Corporate Action of the Debtors

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including (i) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (iii) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by security holders, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. On or prior to the Effective Date, the Directors and Officers of the Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including, for the avoidance of doubt, authorization and issuance of the New Equity Interests in the Reorganized Debtors. The authorizations and approvals contemplated by the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

## G.     Effectuating Documents; Further Transactions

Except as otherwise provided for in the Plan, on and after the Effective Date, the Reorganized Debtors, and the Directors and Officers, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further

evidence the terms and conditions of the Plan in the name of, and on behalf of, the Reorganized Debtors, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

## H.     Post-Confirmation Operations and Marketing of Hotel Property

The post-Confirmation operations and marketing of the Hotel Property shall be conducted in accordance with the Mediated Settlement Agreement. The Independent Manager, the Independent Auditor, and the Independent Broker will be contractually obligated to accept instructions only if given in writing (i) jointly by the Guillory Parties and the Lee Parties; or (ii) by order of the Bankruptcy Court.

All of the CP Hotels cash, assets, and books and records will be turned over to the Independent Manager. The Independent Manager will have sole and exclusive control over all of the assets, and sole signature authority over all accounts. James Guillory, Jr. will continue to manage administration of the Chapter 11 Cases in a manner consistent with the Mediated Settlement Agreement. The Independent Manager will provide monthly reports to the Lee Parties and Guillory Parties and will give daily access to all financial and other data to those parties in accordance with its customary practices.

The Independent Broker will market the Hotel Property as provided in the Mediated Settlement Agreement. If a sale is not concluded and closed within twelve (12) months, the automatic stay and discharge injunction will terminate and ZSBNP may foreclose on the Hotel Property under applicable non-bankruptcy law. In connection with the marketing process, and subject to the limitations set forth in the Mediated Settlement Agreement, the Guillory Parties may set the asking price and make any adjustments to the asking price.

## ARTICLE IX.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.     Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided in the Plan or Plan Documents, all Executory Contracts or Unexpired Leases that currently exist between the Debtors and another Person or Entity, and are not listed on the Schedule of Rejected Contracts, shall be deemed assumed by the applicable Debtor with a cure amount of zero dollars ($0.00) unless they (i) were previously assumed or rejected by that Debtor; or (ii) are subject to a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases set forth in the Schedule of Rejected Contracts and Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall re-vest in and be fully enforceable by the applicable Reorganized

Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedules identified in the Plan at any time prior to the Effective Date.

**B.      Indemnification Obligations**

All indemnification provisions, consistent with applicable law, currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, limited partnership agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the Current Directors and Officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such Current Directors and Officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtors than the indemnification provisions in place prior to the Effective Date; *provided*, *however*, that all indemnification obligations arising prior to the Effective Date under the foregoing indemnification provisions shall not constitute obligations of the Reorganized Debtors. For the avoidance of all doubt, all indemnification obligations of the Debtors prior to the Petition Date, whether known or unknown, asserted or assertable, shall constitute General Unsecured Claims against the Debtors' Estates and shall be treated in accordance with the Plan.

**C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim, with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (i) the date of entry of any order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (ii) the effective date of such rejection; or (iii) the Effective Date of the Plan.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of either Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims pursuant to this Plan.

**D.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed**

Any monetary default under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim amount in Cash, subject to the limitation described below, or on such

other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Within thirty (30) days of the entry of the Effective Date, any counter-party to an Executory Contract or Unexpired Lease being assumed by either Debtor asserting a Cure Claim in connection with the assumption of any Unexpired Lease or Executory Contract under Article V (except those counter-parties whose Unexpired Leases or Executory Contracts have been previously assumed by a Final Order of the Bankruptcy Court), must file such Cure Claim with the Bankruptcy Court asserting all alleged amounts accrued or alleged defaults through the Effective Date.  Any party that fails to file a Cure Claim by this deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Reorganized Debtors.  The Reorganized Debtors shall have sixty (60) days from the Effective Date to file an objection to any Cure Claim.  Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court.  Except as may otherwise be agreed to by the parties, by no later than ninety (90) days following the Effective Date, the Reorganized Debtors shall cure all undisputed Cure Claims.  All disputed Cure Claims shall be cured either within thirty (30) days after the entry of a Final Order determining the amount, if any, of the applicable Debtor's liability with respect thereto or as may otherwise be agreed to by the parties.

In the event of a dispute regarding (i) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (ii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.  The Debtors shall provide notices of proposed assumption and proposed cure amounts and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of such assumption. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## E.  <u>Preexisting Obligations to Debtors</u>

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the applicable Debtors or the Reorganized Debtors under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the

Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

**F.    Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

**G.    Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts and Leases, nor anything contained in the Plan, shall constitute an admission by either Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the applicable Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or Reorganized Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

**H.    Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**I.    Contracts and Leases Entered Into After the Petition Date**

Contracts and leases entered into after the Petition Date, if any, including any Executory Contract and Unexpired Leases assumed by either Debtor during the Chapter 11 Cases, will be performed by such Debtor in the ordinary course of business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

**ARTICLE X.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.    Timing and Calculation of Distributions**

As soon as reasonably practicable (as determined by the Debtors) after the Effective Date, in accordance with Articles VI and VII hereof, the Reorganized Debtors shall make distributions to Holders of Allowed Administrative Expense Claims (including Allowed Professional Compensation Claims), Allowed Priority Non-Tax Claims in Class 1, and Allowed Other Secured

Claims in Class 5 (only to the extent the Claim is Secured). Distributions to Holders of Allowed Administrative Expense Claims (including Allowed Professional Compensation Claims) and Allowed Class 1 Claims shall be made from the Debtors' available Cash. Distributions to Holders of Allowed General Unsecured Claims in Class 5 may be made in the ordinary course of business or as otherwise provided in the Plan.

As soon as reasonably practicable after the closing of a sale of the Hotel Property, the Reorganized Debtors shall make distributions to Holders of Allowed Claims in Classes 2, 3, 6, 7, and 8 from the Sale Proceeds of the Hotel Property. Pursuant to the Mediated Settlement Agreement, the Sale Proceeds will be allocated as follows:

| Waterfall of Sale Proceeds | |
|---|---|
| 1st | To pay the brokerage fees and all usual and customary closing costs. |
| 2nd | To repay with accrued interest the Allowed Lee Parties Tax Advance Claim. |
| 3rd | To repay with all accrued and unpaid interest the ZSBNP Secured Claims. |
| 4th | To pay all outstanding debts of Debtor CP Hotels to any party who is not an insider; |
| 5th | To pay the Guillory Parties any amount owed to them (as determined by the Independent Auditor) that exceeds the amount owed by the Guillory Parties to Debtor CP Hotels. |
| 6th | If an only if the Independent Auditor has determined that James Guillory, Jr. owes to Debtor CP Hotels (net of amounts owed to James Guillory, Jr. by Debtor CP Hotels) in excess of $200,000.00, any Allowed Preferential Return Claims calculated in accordance with the Debtor's applicable limited partnership agreement. |
| 7th | The return of Allowed Equity Interests (without any accruals) or distributions in Cash from Sale Proceeds on account of such Allowed Equity Interests, which shall be calculated in accordance with the Debtor's applicable limited partnership agreement. |
| 8th | Any remaining Sale Proceeds shall be paid (A) sixty percent (60%) to the Lee Parties; and (B) forty percent (40%) to (x) the Lee Parties to the extent that the amount owed by the Guillory Parties (as determined by the Independent Auditor) exceeds the amount owed by Debtor CP Hotels to the Guillory Parties); and (y) the balance to the Guillory Parties. |

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter pursuant to the Mediated Settlement Agreement (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the Plan. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.**     **Rights and Powers of the Reorganized Debtors to Make Distributions**

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors.  The Reorganized Debtors shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Reorganized Debtors shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan; (ii) make all distributions contemplated hereby; and (iii) exercise such powers as may be vested in the Reorganized Debtors by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtors to be necessary and proper to implement the provisions hereof.

**C.**     **Delivery of Distributions; Undeliverable or Unclaimed Distributions**

1.     *Record Date for Distribution*. As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be closed, and the Debtors or their respective agents shall not be required to make any further changes in the record holders of any of the Claims or Interests.  The Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Debtors shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

2.     *Delivery of Distributions in General*.  Except as otherwise provided herein, the Debtors shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated in the Debtors' records as of the date of any such distribution; *provided, however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided further, however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by that Holder.

3.     *Minimum Distributions*.  To the extent Cash is distributed under the Plan, no Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim, and such amounts shall be retained by the Reorganized Debtors.

4.     *Undeliverable Distributions and Unclaimed Property*.  In the event that any distribution to any Holder of Allowed Claims or Allowed Interests is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed

property laws to the contrary), and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

## D.    Manner of Payment

Any distribution under the Plan to Holders of Allowed Claims shall be made in Cash.  At the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable Plan Documents or ancillary agreements.

## E.    Distributions to Holders of Disputed Claims

Except as otherwise provided in the Plan, distributions on account of Disputed Claims shall be withheld by the Debtors until such Claims have been either Allowed or Disallowed.  To the extent a Disputed Claim becomes Allowed, the distribution reserved for such Claim shall be distributed to the Holder thereof as soon as practicable in accordance with the Plan.  To the extent a Disputed Claim becomes Disallowed, the distribution reserved for such Claim shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court.

## F.    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  To the extent the Reorganized Debtors make distributions to Holders of Allowed Claims or Interests, the Reorganized Debtors reserve their right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

## G.    Allocations

Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

## H.    No Post-Petition Interest on Claims

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, post-petition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim

against either Debtor shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

## I.  **Setoffs and Recoupment**

Except as expressly provided in the Plan, the Reorganized Debtors may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Reorganized Debtors may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (i) agreed in amount by the Reorganized Debtors and Holder of such Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any and all claims, rights, and Causes of Action that such Reorganized Debtor may possess against the applicable Holder.  In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder has actually performed such recoupment and provided notice thereof in writing to the Debtors on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## J.  **Claims Paid or Payable by Third Parties**

1.  *Claims Paid by Third Parties*.  The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Reorganized Debtors.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution under the Plan on account of such Claim and receives payment from a third party that is not the Debtors or Reorganized Debtors on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution received from the Reorganized Debtors to the extent the Holder's total recovery exceeds the amount such Holder was entitled to receive under the Plan on account of the Claim.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.  *Claims Payable by Third Parties*.  No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent the underlying claim forming the basis of the Claim against either Debtor is adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement to satisfy all or part of the Claim, the applicable portion of such Claim against either

Debtor shall be deemed expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.     *Applicability of Insurance Policies*. Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy, if applicable. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that a Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE XI.
# PROCEDURES FOR RESOLVING
# CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

## A.    Claims Administration Responsibilities

      Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors, with respect to all Claims and Interests, shall have the authority to: (i) file, withdraw, or litigate to judgment, objections to Claims or Interests; (ii) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (iii) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

## B.    Estimation of Claims and Interests

      Before or after the Effective Date, the Debtors or Reorganized Debtors (as applicable) may at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest and any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars ($0.00) unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. The determination of Claims in estimation hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Procedures for specific estimation hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

C.      **Adjustment to Claims or Interests Without Objection**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      **Time to File Objections to Claims**

Except as otherwise specifically provided in the Plan, any objections to Claims shall be filed on or before the later of: (i) one hundred eighty (180) days after the Effective Date, or (ii) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claims.

Holders of General Unsecured Claims that have not filed a Proof of Claim on or before the Bar Date, and whose Claims have not otherwise been Allowed, shall file and serve the Reorganized Debtors any request to the Bankruptcy Court for allowance to file late General Unsecured Claims. If the Bankruptcy Court grants the request to file a late General Unsecured Claim, such General Unsecured Claim shall be treated in all respects as a General Unsecured Claim in Class 7. Objections by the Reorganized Debtors to late-filed Claims and Claims resulting from the rejection of Executory Contracts or Unexpired Leases shall be filed on the later of (a) one hundred eighty (180) days following the Effective Date or (b) the date that is thirty (30) days after the Reorganized Debtors receive actual notice of the filing of such Claim.

Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors effect service in any of the following manners:   (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Chapter 11 Cases on behalf of the Holder of a Claim.

Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Chapter 11 Cases, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution.  The Reorganized Debtors may request at any time that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.

E.      **Disallowance of Claims or Interests**

Except as otherwise specifically provided in the Plan, any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy

Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered.

Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely filed by a Final Order.

## F.    Amendments to Claims or Interests

On or after the Effective Date, a Claim or Interest may not be filed or amended without the express prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Claim or Interest that is filed without such authorization shall be deemed disallowed in full and expunged without any further action.

## G.    No Distributions Pending Allowance

If any objection to a Claim or Interest or portion thereof is filed as set forth in the Plan hereof, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

## H.    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Debtors shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

**ARTICLE XII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

## A.    Mediated Settlement Agreement

Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, the provisions of the Mediated Settlement Agreement shall constitute a good faith compromise and settlement, for good and valuable consideration, by and among the Debtors, the Guillory Parties, the Lee Parties, and the Lender Parties.  The Plan shall be deemed a motion to approve the Mediated Settlement Agreement as a good faith compromise and settlement of the issues addressed

therein pursuant to sections 363 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Mediated Settlement Agreement, as well as a finding by the Bankruptcy Court that the Mediated Settlement Agreement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code and in accordance with and subject to the Mediated Settlement Agreement, for good and valuable consideration, the adequacy of which is hereby confirmed, upon the Effective Date of the Plan, each of (i) the Debtors, the Estates, and the Reorganized Debtors, on behalf of themselves and their respective estates, (ii) the Guillory Parties, (iii) the Lee Parties, and (iv) the Lender Parties (each of the foregoing (i)–(iv), individually, a "***Mediated Settlement Agreement Party***" and the foregoing (i)–(iv), collectively, the "***Mediated Settlement Agreement Parties***") shall be deemed to have conclusively, absolutely, irrevocably, and forever released, waived, and discharged each other Mediated Settlement Agreement Party with respect to all claims, causes of action, obligations, suits, and damages related to the Debtors or their properties, except for (a) amounts or obligations arising under the Mediated Settlement Agreement, (b) amounts or obligations arising under the ZSBNP loans, and/or (c) amounts as determined to be due by or to the Guillory Parties by the Independent Auditor's non-rejected report. With respect to the foregoing (a)–(c), each of the Mediated Settlement Agreement Parties' rights are expressly reserved, in accordance with and subject to the Mediated Settlement Agreement. For the avoidance of doubt, nothing in this paragraph shall be deemed to alter or modify the terms of the Mediated Settlement Agreement.

## B.     <u>Release and Discharge of Debtors</u>

Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided for in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; or (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

C.    **Release of Liens**

Except as otherwise provided in the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Secured Claims that the Debtors elect to Reinstate, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the applicable Reorganized Debtor and its successors and assigns.  On and after the Effective Date, any Holder of such Secured Claim (and the applicable agents for such Holder), at the expense of the Reorganized Debtors, shall be authorized and directed to release any collateral or other property of either Debtor (including any Cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

D.    **Releases by the Debtors**

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and the Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors' in- or out-of-court restructuring efforts, the Chapter 11 Cases, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

E.    **Exculpation**

The Exculpated Parties shall not have or incur any liability to any Holder of a Claim or Interest, for any act, event, or omission from the Petition Date to the Effective Date in connection with or arising out of the Chapter 11 Cases, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan, unless such Entity's action is determined as: (i) bad

faith; (ii) actual fraud; (iii) willful misconduct; or (iv) gross negligence, in each case by a Final Order of a court of competent jurisdiction.  Each Entity may reasonably rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors.

## F.      Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been satisfied, released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of, in connection with, or with respect to any such Claims or Interests unless such Holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner  any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon Confirmation of the Plan, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of any Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan.

## G.      Protections Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because the Reorganized Debtors have been debtors under chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

## H.     <u>Recoupment</u>

In no event shall any Holder of a Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

## I.     <u>*Ipso Facto* and Similar Provisions Ineffective</u>

To the extent permitted by applicable law, any term of any prepetition policy, contract, or other obligation applicable to the Debtors shall be void and of no further force or effect to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation as a result of, or gives rise to a right of any Entity based on: (1) the insolvency or financial condition of a Debtor; (2) the commencement of any of the Chapter 11 Cases; (3) either the Confirmation or Consummation of the Plan; or (4) any of the transactions contemplated herein.

## J.     <u>Reimbursement or Contribution</u>

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date: (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim is no longer contingent.

**ARTICLE XIII.**
**CONDITIONS PRECEDENT TO**
**CONFIRMATION AND CONSUMMATION**

## A.     <u>Conditions Precedent to Confirmation</u>

The following are conditions precedent to Confirmation of the Plan that shall be satisfied or waived in writing in accordance with Article XI.C. of the Plan:

1.      The Plan and Confirmation Order shall be in form and substance acceptable to the Debtors.

## B.     <u>Conditions Precedent to Effectiveness</u>

1.      The Bankruptcy Court shall have entered the Confirmation Order in a form and substance acceptable to the Debtors and shall not (a) have been reversed or vacated, (b) be subject to a then-effective stay, or (c) have been modified or amended; and

2.      The Plan, including any amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date

but before the Effective Date, shall be in form and substance acceptable to the Debtors; and

**C.      Waiver of Conditions**

The conditions to Confirmation and the Effective Date set forth in this Article may be waived only with the prior written consent of the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**D.      Effect of Failure of Conditions**

If Consummation does not occur, then the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of Claims, Interests, or Causes of Action by the Debtors; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Person or Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Person or Entity.

**ARTICLE XIV.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.      Modifications and Amendments**

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors expressly reserve their rights to revoke or withdraw, or, to alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.      Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan made pursuant Section A., above, are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure under Bankruptcy Rule 3019.

**C.      Revocation or Withdrawal of Plan**

The Debtors reserve their rights to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be

deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Person or Entity.

# ARTICLE XV.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which either Debtor is a party or with respect to which either Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, the Schedules of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, any other contested or litigated matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve all matters related to section 1141 of the Bankruptcy Code;

7.      Enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, including, but not limited to, the Mediated Settlement Agreement;

8. Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Person or Entity with respect to Consummation or enforcement of the Plan;

11. Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan hereof and enter such orders as may be necessary to implement such releases, injunctions and other provisions;

12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

13. Enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. Determine any other matters that may arise in connection with or related to the Plan, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15. Enter an order closing the Chapter 11 Cases;

16. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, regardless of whether such termination occurred prior to or after the Effective Date;

22.     Enforce all orders previously entered by the Bankruptcy Court; and

23.     Hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, or any other term of the Plan, nothing contained in the Plan or Confirmation Order shall constitute a waiver of any party's right to a trial by jury in any adversary proceeding or contested matter, or otherwise purport to broaden the Bankruptcy Court's post-Confirmation subject matter jurisdiction.

## ARTICLE XVI.
## MISCELLANEOUS PROVISIONS

### A.     <u>Immediate Binding Effect</u>

Subject to Article XII hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon: (1) the Estates; (2) the Reorganized Debtors; (3) all Holders of Claims or Interests (regardless of whether such Holders are deemed to have accepted the Plan); (4) all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan; (5) each Entity acquiring property under the Plan; and (6) any and all non-Debtor parties to Executory Contracts and Unexpired Leases.

### B.     <u>Additional Documents</u>

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such Plan Documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.     <u>Payment of Statutory Fees</u>

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Reorganized Debtors for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed—whichever occurs first.

### D.     <u>Reservation of Rights</u>

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no

force or effect if the Effective Date does not occur.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of an action by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**E.      Successors & Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.      Notices**

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including any facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**OKIN ADAMS BARTLETT CURRY LLP**
Attn: David L. Curry, Jr.
1113 Vine St., Suite 240
Houston, Texas 77002
Tel: 713.228.4100
Fax: 346.247.7158
dcurry@okinadams.com

**G.      Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**H.      Entire Agreement**

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Documents) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which are deemed merged and integrated into the Plan.

## I.   Exhibits

All Exhibits and documents attached to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the Exhibits and documents are filed, copies of such Exhibits and documents shall be available upon written request to the Debtors' counsel at the address set forth herein or by downloading such Exhibits and documents from the Court's CM/ECF filing system.  To the extent any Exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

## J.   Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

## K.   Plan Proposed in Good Faith

Upon entry of the Confirmation Order, the Debtors will be deemed to have proposed the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such individuals or Entities or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the proposal of the Plan or participation in the Chapter 11 Cases.

## L.   Closing the Chapter 11 Cases

The Reorganized Debtors shall, promptly after the administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

## M.   Waiver or Estoppel

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any arguments, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the

Debtors, or their counsel, or any other Entity, if such agreement was not disclosed in the Plan or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**N.      Controlling Document**

To the extent that there is a conflict between the provisions of the Plan and the Confirmation Order, the terms of the Confirmation Order shall control first, and the terms of the Plan shall control second.

Respectfully submitted on the 7th day of August, 2023.

**OKIN ADAMS BARTLETT CURRY LLP**

By:      /s/   *David L. Curry, Jr.*
    Christopher Adams
    Texas Bar No. 24009857
    Email: cadams@okinadams.com
    David L. Curry, Jr.
    Texas Bar No. 24065107
    Email: dcurry@okinadams.com
    Ryan A. O'Connor
    Texas Bar No. 24098190
    Email: roconnor@okinadams.com
    1113 Vine St., Suite 240
    Houston, Texas  77002
    Tel: 713.228.4100
    Fax: 346.247.7158

**ATTORNEYS FOR THE DEBTORS**

49

**<u>EXHIBIT 2</u>**

**Plan Documents**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 23-30023** |
| **CENTERPOINTE HOTELS @ TEXAS II,** | § | |
| **LP,** *et al.,* | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

### MEDIATED SETTLEMENT AGREEMENT

This is a Mediated Settlement Agreement between Centerpointe Hotels @ Texas II, LP, CenterPointe Partners@ Texas, LLC (the "Debtors"), James Guillory and his parents (the "Guillorys") and related entities (together with the Guillorys, the "Guillory Parties", as listed on Exhibit "A"), George Lee and his related parties (the "Lee Parties", as listed on Exhibit "B") and ZSBNP and its related parties (the "Lender", as listed on Exhibit "C").

The provisions of the first two paragraphs are binding on execution. The provisions of the balance of this Agreement are binding only upon approval of the United States Bankruptcy Court for the Southern District of Texas.

1. The Debtors shall promptly file a proposed combined plan and disclosure statement containing the terms of this Agreement. The Debtors will request an expedited hearing on conditional approval of the disclosure statement. The Debtors will request a hearing on approval of the proposed plan by not later than August 7, 2023.

2. The Guillory Parties, the Lee Parties and ZSBNP will not oppose the relief requested by paragraph 1 of this Agreement and will support a proposed plan that incorporates this Agreement, with no additional adverse terms. ZSBNP consents to the use of cash collateral in accordance with the terms of the existing cash collateral order unless there is a breach of this Agreement. ZSBNP consents to the use of cash collateral by the independent manager as set forth in this Agreement, and otherwise as set forth in the existing cash collateral order.

3. Not later than May 19, 2023, the Lee Parties will submit to the Guillory Parties three lists:

   a. The first list will include three independent property managers who are (i) acceptable to the Lee Parties as property managers of the Debtors' hotel; and (ii) have experience operating 5 or more "Hilton" franchised hotels. Independent property managers must have no relationship to the Lee Parties; that is, the Lee Parties may have no present or past contractual, familial or ownership interest with the three proposed property managers.

1 / 8

b.  The second list will include three independent property brokerage companies who are acceptable to the Lee Parties as property brokerage companies for the Debtors' hotel; that is, the Lee parties may have no present or past contractual or ownership interest with the three proposed brokerage companies. Notwithstanding the foregoing sentence, a brokerage will be independent if it is one of the 10 largest hotel brokerage companies in the United States.

c.  The third list will include three Independent Auditors who are acceptable to the Lee Parties as Independent Auditors. Independent auditors must have no relationship to the Lee Parties; that is, the Lee Parties may have no present or past contractual, familial or ownership interest with the three proposed Independent Auditors. One of the Independent Auditors will be retained to conduct an audit to determine the amounts, if any, owed by the Guillory Parties to the LP and the amounts owed by the LP to any Guillory Party. Each Independent Auditor must agree to a fixed price of not greater than $50,000.00 to conduct the audit.

4.  Not later than May 25, the Guillory Parties will select one of the three managers, one of the three brokers, and one of the three Independent Auditors. The broker and Independent Auditor will be retained immediately upon selection; the manager will be retained, subject to Hilton's approval rights, if any. If Hilton's approval is required but not obtained, the parties will repeat the selection process until Hilton approves. All submissions and communications with Hilton will be jointly made by the Guillory Parties and the Lee Parties.

5.  The independent manager ("Independent Manager"), the Independent Auditor ("Independent Auditor"), and the independent broker ("Independent Broker") will be contractually obligated to accept instructions only if given in writing (i) jointly by the Guillory Parties and the Lee Parties; or (ii) by order of the Bankruptcy Court.

6.  Monthly cash flow will be applied as follows:

a.  First, to pay all ongoing property expenses (including such amounts as the manager determines are owed as monthly payments on the EIDL loan) as and when due;

b.  Second, to pay the Independent Auditor;

c.  Third, to establish a cash reserve, which together with all cash reserves on hand, totals $100,000.00;

d.  Fourth, to deposit $12,000.00 per month in a property tax escrow;

e.  Fifth, to pay ZSBNP $37,500.00, which amount will be applied first to interest and then to principal on the ZSBNP loans; all amounts applied to the ZSBNP loans will be applied pro rata between the two loans;

2 / 8

f.  Sixth, to pay preferred returns for the month to the holders of equity in the amounts determined by the pre-petition LP agreement;

g.  Seventh, 40% to the Guillory Parties and 60% to the Lee Parties.

7.  The ZSBNP loans will bear interest at their non-default rate. It will not be a default if the ZSBNP debt service is not paid prior to a sale of the property due to a cash flow shortfall in full payment under paragraph 6 of this Agreement; provided, any unpaid interest will accrue at the non-default rate. All property insurance policies must name ZSBNP as an additional loss payee.

8.  All of the Limited Partnership's cash, assets and books and records will be turned over to the Independent Manager. The Independent Manager will have sole and exclusive control over all of the assets, and sole signature authority over all accounts. James Guillory, Jr. will manage the Debtors' bankruptcy cases in a manner consistent with this Agreement. The Independent Manager will provide monthly reports to the Lee Parties and the Guillory Parties and will give daily access to all financial and other data to those parties in accordance with its customary practices.

9.  The Debtors and the Guillorys must promptly provide the Independent Auditor with all books, records and accounts of any entity under their control if the books, records and accounts are requested by the Independent Auditor. "Promptly" shall mean that the documents are provided in a commercially reasonable manner, but not later than 21 days of receipt of the request.

10. The Independent Auditor will turn over a report to the Guillorys and the Lees upon its completion, and file a notice with the Bankruptcy Court that the report has been served on the parties. The report will not be filed with the Court unless it is challenged. Each of the Guillorys and the Lees will have 14 days after notice of the report is filed to challenge the report by filing a motion to reject the report with the Bankruptcy Court. The Bankruptcy Court may then reject the report or accept it. If no challenge is timely filed, or if the report is not rejected, it will be final for all purposes. The amounts owed, if any, shown in an accepted auditors report, will conclusively be due as reflected in the report.

11. If a sale is not concluded and closed within 12 months of the date on which the Independent Broker is retained, the automatic stay and the discharge injunction will terminate and ZSBNP may foreclose on the hotel under applicable non-bankruptcy law. Notwithstanding paragraph 5, the Guillorys may set the asking price for the property, and any adjustments to the asking price. No asking price and no contract may be for a total price that will produce net proceeds that are less than the outstanding amount due under paragraphs 13(b), 13(c) and 13(d) below.

12. The Lees will promptly advance funds to pay the 2022 property taxes, at an annual interest rate of 15%.

13. The proceeds of any sale will be allocated as follows:

    a.  First, to pay the brokerage fees and all usual and customary closing costs;

    b.  Second, to repay with accrued interest the advance made pursuant to paragraph 12;

    c.  Third, to repay with all accrued and unpaid interest, the ZSBNP loans;

    d.  Fourth, to pay all outstanding debts of the LP to any party who is not an insider;

    e.  Fifth, to pay to the Guillory Parties any amount owed to them (as determined by the Independent Auditor) that exceeds the amount owed by the Guillory Parties to the LP;

    f.  Sixth, if and only if the Independent Auditor has determined that James Guillory, Jr. owes to the LP (net of amounts owed to James Guillory, Jr. by the LP) in excess of $200,000.00, any unpaid preferential returns calculated in accordance with the parties' pre-petition LP agreement;

    g.  Seventh, the return of equity (without any accruals) as calculated in accordance with the parties' prepetition LP agreement;

    h.  Eighth:

        i.  60% to the Lee Parties;
        ii.  40% to (x) the Lee Parties to the extent that the amount owed by the Guillory Parties (as determined by the Independent Auditor) exceeds the amount owed by the LP to the Guillory Parties); and (y) the balance to the Guillory Parties.

14. If, after the distributions made under paragraph 13, an amount is still owing to the LP by the Guillory Parties, the Lee Parties (acting for the LP) may commence a suit to collect such amounts.

15. Upon the Effective Date of the plan, the parties will exchange mutual releases of all claims and causes of action related to the Debtors or their properties except for:

    a.  Amounts or obligations arising under this Agreement;

    b.  Amounts or obligations arising under or related to the ZSBNP loans; and/or

    c.  Amounts as determined to be due by or to the Guillory Parties by the Independent Auditor's non-rejected report.

16. Upon payment in full of all amounts due under paragraph 13(c) of this Agreement, each party will file a full and unconditional withdrawal of any allegations made in any forum that any other party has engaged in any sort of wrongful conduct.

17. The parties shall not disparage one another, publicly or privately.

May 15, 2023

_____
For the Guillory Parties

_____
For the Lee Parties

_____
For the Debtors

_____
For the Lender

## EXHIBIT "A"
## The Guillory Parties

James O. Guillory, Jr., James O. Guillory, Sr., Lou A. Guillory, DCG Hotel Partners, LLC, DCG Homes, Ltd., DCG Management, LLC, Gibson Hotel Management, LLC, CenterPointe Partners @ Texas, LLC, CenterPointe Hotel Partners, LLC, Creekstone Properties LTD, Creekstone Properties Management LLC, and HarDam Hospitality, LLC as well as all of the foregoing entities' managers.

**Exhibit "B"**
**The Lee Parties**

George Lee, Jack Lee, Paul Lee, Agama Properties, LLC, and Robby Frank

**Exhibit "C"**
**The Lender Parties**

ZSBNP, LLC and its manager (Thomas L. Hunt, in that capacity).

## Schedule of Retained Causes of Action

Pursuant to the *Debtors' Joint Chapter 11 Plan of Reorganization and Disclosure Statement,* dated August 7, 2023 (as may be further amended, modified, or supplemented, the "Plan"),[1] the Retained Causes of Action set forth below are not being released, are expressly preserved, and constitute Estate Property that will vest in and be transferred to the Reorganized Debtors upon the Effective Date of the Plan.  In addition, unless a Cause of Action that is not otherwise listed below as a Retained Cause of Action is expressly waived, relinquished, released, compromised or settled in the Plan, Confirmation Order, or any other Final Order of the Bankruptcy Court, the Debtors expressly reserve such Causes of Action (including any counterclaims) as Retained Causes of Action for later adjudication in accordance with the Plan. All Retained Causes of Action shall be preserved for the benefit of the applicable Reorganized Debtors whether or not brought by the Debtors prior to the Effective Date of the Plan.

Without limiting the generality of Article VIII.E of the Plan, and except as otherwise provided in the Mediated Settlement Agreement, the following shall constitute Retained Causes of Action:

## 1.      Causes of Action Related to Tax Credits and Refunds

Retained Causes of Action shall include all Causes of Action (including counterclaims) against or related to all Governmental Units and taxing authorities that owe or may in the future owe money to the Debtors or Reorganized Debtors, as applicable. Such Causes of Action expressly include any claims that the Debtors or their Estates may have for tax credits or employee retention credits as may be available under the CARES Act or other applicable non-bankruptcy law.

## 2.      Causes of Action Related to Avoidance Actions

Retained Causes of Action shall include all Causes of Action in which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, and/or a transfer is avoidable under sections 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code.

Further, Retained Causes of Action specifically include, but are not limited to, any and all potential Insider preference claims under section 547 of the Bankruptcy Code related to transfers to an Insider made between the ninety (90) days and one (1) year before the filing of the Chapter 11 Cases on account of an antecedent debt owed by the respective Debtor.

Further, such Causes of Action specifically include, but are not limited to, any and all potential fraudulent transfer claims as may be asserted under Bankruptcy Code sections 544 and 548, and the applicable state law fraudulent transfer statutes, to transfers made within the applicable lookback time period applicable to the particular fraudulent transfer statute.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

3.      **Causes of Action Related to Current or Former Insiders and/or Related Entities**

Retained Causes of Action shall include all Causes of Action against or related to all current or former Insiders (including directors, officers, limited partners) and/or related Entities, including claims or actions, litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial.  Such Causes of Action specifically include, but are not limited to: (i) any claims against such parties for mismanagement, tortious interference, gross negligence, and/or the breach of any fiduciary duty arising under applicable law, including without limitation, the duties of loyalty and care; and (ii) any and all potential claims related to transfers made within the four (4) year period before the filing of the Chapter 11 Cases, specifically including those transfers identified by the Debtors in their respective Schedules of Assets and Liabilities and Statements of Financial Affairs filed in the Chapter 11 Cases.

[*Remainder of Page Intentionally Left Blank*]

## Schedule of Rejected Contracts and Leases

Pursuant to the *Debtors' Joint Chapter 11 Plan of Reorganization and Disclosure Statement*, dated August 7, 2023 (as may be further amended, modified, or supplemented, the "Plan"),[1] the Executory Contracts and Unexpired Leases set forth below are being rejected by the Debtors upon the Effective Date of the Plan:

None.


[*Remainder of Page Intentionally Left Blank*]

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.